## Marple Township Appeal.

Argued April 24, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John T. Mulligan*, with him *Domenic D. Jerome*, for appellant.

*Guy G. deFuria,* with him *Fronefield, deFuria and Petrikin,* for appellees.

OPINION BY MR. JUSTICE COHEN, October 9, 1970:

This is an appeal from an order of the Court of Common Pleas of Delaware County reversing an order of the Township of Marple Zoning Board of Adjustment, granting a special exception and holding a section of the zoning ordinance unconstitutional.

Frank Facciolo and William Barrett, appellees, own property on the northwest corner of the intersection of Paxon Hollow and Sproul Roads which is in an area zoned B-Business. They desire to build a gasoline service station on that property. The Marple Township Zoning Ordinance, Article X, section 1001c, permits a gasoline service station in a B-Business district if a special exception is granted therefor. In addition Article XIII, section 1307c(5) provides that in cases such as this "Each building must be at least 250 feet from any residential building, church or school and any existing use of the same type."

After the building inspector refused to grant a permit on the grounds (a) that a special exception was required and (b) that the building on the proposed service station would be within 250 feet of a residence, appellees appealed to the Zoning Board of Adjustment. They sought a special exception and in addition relief from the provisions of section 1307c(5) on the theory that it was not a reasonable exercise of the police power and therefore unconstitutional.[1] After a hearing, the Board refused to grant a special exception and upheld the validity of the distance requirement.

---

[1] Appellees stated that they sought a variance from the provisions of section 1307c(5). When they attacked the constitutionality of the ordinance, however, they were not seeking a variance (which assumes the validity of the enactment) but rather were seeking to have the provision nullified.

On appeal the Court of Common Pleas of Delaware County reversed. The court found that the Board did not have sufficient reason to refuse the special exception and also that the distance requirement was unconstitutional as being arbitrary, discriminatory and having no relation to the objects of the police power. *Hershone Appeal,* 55 Del. Co. 352 (1968); *Atlantic Richfield Company v. Erie,* 43 Pa. D. & C. 2d 504 (1967).

When there is an application for a special exception, the burden is on those who would deny the exception to show that the granting of such exception would be adverse to the public interest. *Delaware County Community College Appeal,* 435 Pa. 264, 254 A. 2d 641 (1969); *Jacobi v. Zoning Board of Adjustment,* 413 Pa. 286, 290, 196 A. 2d 742 (1964). The test to be applied by this Court when the proceeding before the court below was based entirely on the record established before the board is whether the board clearly abused its discretion or committed an error of law. *Atria, Inc. v. Mount Lebanon Township Board of Adjustment,* 438 Pa. 317, 264 A. 2d 609 (1970); *Pyzdrowski v. Pgh. Bd. of Adju.,* 437 Pa. 481, 263 A. 2d 426 (1970); *Rieder Appeal,* 410 Pa. 420, 188 A. 2d 756 (1963). When the court below hears additional testimony, our function on appeal is to determine whether the court rather than the board abused its discretion or committed an error of law. *Mason v. Schaefer,* 410 Pa. 239, 189 A. 2d 178 (1963).

Initially we must determine which test we should apply in reviewing the record in this action. In conjunction with the appeal to the court below the parties filed a stipulation which in part states: "And Now, July 14, 1969, it is stipulated and agreed . . . that in accordance with the Order of this Court dated April 8, 1969, under which the parties were given leave to introduce additional testimony, that instead of presenting additional testimony the parties hereto agree that the

facts hereinafter set forth be considered as having been taken by way of additional testimony in Court and as if taken therein. . . ." That stipulation consists of nine paragraphs all of which are concerned with the validity of an ordinance enacted by the Township which purported to change the classification of an area which included appellees' land from B-Business to O-Office Building. The paragraphs detail the events surrounding the passage of the ordinance and ask the court to determine its validity. Apparently this was the last time the Township desired to raise this issue for the opinion of the lower court states that the Township made no effort to show that the ordinance was validly adopted.

The matters contained in the stipulation had absolutely nothing to do with factual grounds for granting or denying a special exception. The nine paragraphs contain no new factual matters which would assist the court in deciding whether granting the special exception would be adverse to the public interest. The argument over the validity of the ordinance was solely a legal one in that if the land were reclassified to O-Office Building and if the new classification applied to this application appellees would have no right under that ordinance to a special exception regardless of what facts were shown. This is the same situation as if the parties by way of stipulation had brought to the court's attention a recent decision of this or another court and asked the court to apply that new law to the facts that had already been developed before the board. If the court below had found the ordinance valid, all of the facts developed before the board would have been irrelevant unless the court found that the new ordinance was not pending when appellee's application was made. *Lhormer v. Bowen*, 410 Pa. 508, 188 A. 2d 747 (1963). Assuming that the ordinance was not pending, the court would then go on to decide whether a special ex-

ception should have been granted, but the record it would use for that purpose would have been developed entirely before the board. The matter presented in the stipulation raised only legal as opposed to factual issues and was not the type of additional evidence that shifts our review from abuse of discretion or error of law on the part of the board to that of the court. The fact that the parties referred to this as additional testimony is irrelevant for they cannot by the application of labels alter the situation that actually exists and our scope of review. Therefore, we must decide whether in refusing the special exception the board committed a clear abuse of discretion or error of law.

Section 1306 of the Township zoning ordinance provides that the following matters shall be among those considered when the board is deciding whether or not to grant a special exception: "H.   The effect on traffic in the area.   I.   Whether or not the proposed exception would affect the health, safety, morals and general welfare of the people and residents in the surrounding area." The board concluded that granting the special exception would be contrary to the spirit of the zoning ordinance and contrary to the public safety and general welfare of Township residents. By far, the greatest amount of testimony against granting the exception related to the traffic problems that would thereby be created. The record discloses that at least 25,000 vehicles per day pass this location on Sproul Road and that in the evening, on Fridays and on the week-ends the traffic is bumper to bumper much of the time. A planning expert [Morton Lustig] testified as follows: "On the specific issues before the Court [sic board] at this point, on traffic, I think that the problem here is one of friction with congested conditions on Sproul Road, and this has to do not only with the number of school buses and the changing development of property but on personal and long-time acquaintance with the

situation in which traffic comes to a creeping standstill on Saturday and on Friday evenings, so that the movement of traffic in and out, especially at a sensitive corner of this kind, will be a significant addition to the hazards of the movement of traffic on the intersection. It is also not the quantity of traffic alone but the fact that this intersection is so close to Lawrence Road and the movements, the turning movements of traffic create significantly more hazardous conditions than they would if there were no pressure of this kind at the 'T' intersection of Lawrence Road." And later: "I am concerned about the location of the curb cuts, the driveway access for this service station. I haven't seen the plan. But if most access is going to be on and off Sproul Road, with or without left turns,[2] left turns would be most dangerous there, it seems to me that the curb cut closest to Paxon Hollow Road will be dangerously close to the curve radius for the turning movement which is a very heavy one indeed, especially during the school hours, but also in the morning not only for school people but for a great many people who are on their way to school either as students or as members of the faculty or staff and again the afternoon one when there is this very heavy movement of traffic returning homeward." Several other witnesses also testified to the great volume of traffic on Sproul Road and the increased congestion and hazard that would result from cars turning into and out of the proposed station. In *Blair v. Board of Adjustment*, 403 Pa. 105, 107, 169 A. 2d 49 (1961), while affirming the board's denial of a special exception, we recognized the unique traffic problems created by gasoline service stations and stated: "A gasoline service station requires the physical pres-

---

[2]The record indicates that access to the station would be by two methods of ingress and egress on Sproul Road and one on Paxon Hollow Road.

ence of the vehicle in order to perform its function and justify its existence. In most cases the customer cannot park his automobile across the street and accomplish the business normally transacted at a service station. Rather he must drive on to the premises. Consequently, abnormal traffic patterns result, whether or not accompanied by an appreciable increase in the volume of traffic. This is the case especially where there are many service stations within a small area." Here the testimony shows that there were already 4 gasoline service stations within 1800 feet of the subject site.

When deciding whether the evidence supported a finding that the proposed exception would be adverse to the public interest and welfare, the board was faced with a record that indicated that the area was already served by an adequate number of service stations and that the addition of another station would make a difficult traffic situation even more difficult. We cannot say that in deciding as it did the board committed a clear abuse of discretion or an error of law.[3] As we have decided that the board did not err in refusing the special exception, we need not decide whether the Township's ordinance requiring a gasoline station building to be at least 250 feet from any residential building, church, school or existing use of the same type is constitutional.

Order reversed.

Mr. Justice JONES took no part in the consideration or decision of this case.

---

[3]We feel the record indicates the Township did meet its heavy burden of establishing that the increased traffic and abnormal traffic patterns resulting from turns into and out of the station had a high degree of probability of causing serious detriment to the community. *Delaware County Community College Appeal*, supra, at 270.