Robert W. Driscoll, Sonya Dehon Driscoll and
Continental Bank and Sonya Dehon Driscoll,
Trustees u/w Jules Dehon, Deceased, Appellants,
*v.* Plymouth Township and Lamont Gear Company, Appellees. (Two Cases)

Argued April 3, 1974, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*James L. Hollinger,* with him *Edward R. Schmidt* and *Smith, Aker, Grossman, Hollinger & Jenkins,* for appellants.

*Norma L. Shapiro,* with her *Jerome A. Hoffman* and *Dechert, Price & Rhoads,* for appellee.

Opinion by Judge Mencer, June 4, 1974:

On May 30, 1973, Lamont Gear Company (Lamont) received a building permit from the building inspector of Plymouth Township for the construction of a building to house its gear manufacturing operations. On June 25, 1973, an appeal from the issuance of this permit was filed with the Plymouth Township Zoning

Hearing Board (Board) by Robert W. Driscoll, Sonya Dehon Driscoll, and Continental Bank and Sonya Dehon Driscoll, trustees under the will of Jules Dehon, deceased (appellants). Lamont then, pursuant to Section 916 of the Pennsylvania Municipalities Planning Code,[1] petitioned the Court of Common Pleas of Montgomery County for an order upon appellants to post a bond as a condition to continuing their appeal before the Board.

On July 12, 1973, a hearing was held before the Honorable ROBERT W. HONEYMAN who refused to hear evidence on the merits of the appeal or appellants' financial status as requested by appellants' counsel. On July 20, 1973, Judge HONEYMAN ordered that, as a condition to the maintenance of their appeal, appellants post "the following amounts of security either in cash, secured by real estate in Montgomery County or by bond with surety:

(1) $15,000.00 forthwith
(2) An additional $20,000.00 by October 1, 1973
(3) An additional $25,000.00 by November 1, 1973
(4) Additional security of $5,000.00 per month commencing with January, 1974."

Judge HONEYMAN's order also stated that failure to post such security would terminate the appeal adversely to appellants.

Instead of posting the bond as ordered, appellants appealed to this Court. Thereafter, on August 10, 1973, upon Lamont's motion, Judge HONEYMAN issued an order dismissing their appeal before the Board because of appellants' failure to post security as previously ordered. Judge HONEYMAN's second order was then appealed to this Court, and the two appeals were ordered consolidated for argument and decision since they raise similar issues. Argument having been heard, we now attempt to resolve the issues presented.

---

[1] Act of July 31, 1968, P. L. 805, art. IX, 53 P.S. §10916.

Both of these appeals attack Section 916 of the Pennsylvania Municipalities Planning Code, 53 P.S. §10916, which provides: "Upon filing of any proceeding referred to in section 914 [53 P.S. §10914] and during its pendency before the board all land development pursuant to any challenged ordinance, order or approval of the zoning officer or of any agency or body, and all official action thereunder shall be stayed unless the zoning officer or any other appropriate agency or body certifies to the board facts indicating that such stay would cause imminent peril to life or property, in which case the development or official action shall not be stayed otherwise than by a restraining order, which may be granted by the board or by the court having jurisdiction of zoning appeals on petition after notice to the zoning officer or other appropriate agency or body. When an application for development, preliminary or final, has been duly approved and proceedings designed to reverse or limit the approval are filed with the board by persons other than the applicant, the applicant may petition the court having jurisdiction of zoning appeals to order such persons to post bond as a condition to continuing the proceedings before the board. The question whether or not such petition should be granted and the amount of the bond shall be within the sound discretion of the court."

## Constitutional Argument

Appellants first attack the constitutionality of Section 916 as a denial of due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and as a denial of the equal protection of the law as guaranteed by the Fourteenth Amendment. We find this attack to be without merit.

A presumption of constitutionality is afforded to legislative enactments and they will not be declared

unconstitutional unless they clearly, palpably, and plainly violate the Constitution. *Daly v. Hemphill,* 411 Pa. 263, 191 A. 2d 835 (1963). We find that appellants have not overcome this presumption of constitutionality.

Appellants' attack on Section 916 is premised on their contention that an individual has a constitutional right to a hearing prior to any adjudication of his property rights and that this right is infringed by the imposition of the requirement for posting a bond as a condition to receiving a hearing. In the alternative, they argue that, even if such a provision for imposing the requirement for posting a bond is constitutional, it can only be so if interpreted to mean that the posting of a bond may only be ordered after a hearing in which a court considers the validity of the appellant's claim on the merits and the appellant's financial ability to post such a bond.

As authority for their assertions, appellants cite several cases involving indigents who were criminal defendants in which certain fees were held to be unconstitutional because they denied the indigent access to the judicial process. Our review of these cases reveals that the rationale for their holdings is that, when an individual is forced into judicial proceedings, he should not be prejudiced because he cannot afford to pay a fee which is necessary for an adequate defense. We find that this rationale is not present in a civil suit such as the one now before us in which the complaining parties are voluntary litigants. Consequently, these indigent criminal cases cited by appellants are of little assistance in the resolution of the questions presented by these appeals.

Appellants' contentions must stand or fall on the applicability of *Boddie v. Connecticut,* 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971), to the questions now before us. *Boddie* is a case in which filing fees in a civil suit were held to be unconstitutional. The Unit-

ed States Supreme Court held that a state denies due process of law to indigent persons[2] by refusing to permit them to bring divorce actions except on payment of fees which they are unable to pay.

In *Boddie,* the same rationale used in criminal cases involving indigents was used in a civil suit because of the nature of the rights involved; namely, the marriage relationship as it affects other human relationships fundamental to life and liberty. The Court was of the opinion that, since the only means of ending the marriage relationship was by obtaining a divorce through the courts, a state could not deny access to indigents by the imposition of fees which they were unable to pay. The Court's holding is based on the involuntary use of the courts as an exclusive precondition to the determination of a fundamental right, and, as in the criminal cases, it is this involuntariness of the use of the courts which is the rationale for the Supreme Court's holding.

The Court limited its holding in *Boddie* to the unique circumstances presented there; namely, a combination of indigency and the access to the courts to pursue *fundamental* rights surrounding the marriage relationship which could only be terminated through the courts. This limitation of its holding is made clear by the following statement: "In concluding that the Due Process Clause of the Fourteenth Amendment requires that these appellants be afforded an opportunity to go into court to obtain a divorce, we wish to re-emphasize that we go no further than necessary to dispose of the case before us, a case where the bona fides of both appellants' indigency and desire for divorce are here beyond dispute. We do not decide that access for all individu-

---

[2] The value of *Boddie* as a precedent for appellants' arguments is greatly diminished by the fact that appellants have never alleged that they are indigent.

als to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship." 401 U.S. at 382-83.

We find that the right of an individual to appeal from the issuance of a building permit to the owner of a neighboring property is not an exclusive precondition to the adjustment of a fundamental human relationship which the Court found constitutionally protected in *Boddie*. For this reason, we agree with Lamont that, even if appellants were indigent, the recent case of *United States v. Kras*, 409 U.S. 434, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973), rather than *Boddie,* would control the present appeal. In *Kras,* the Court upheld the denial of discharge in bankruptcy to an indigent who could not afford a filing fee, holding that such denial was neither a violation of due process nor of equal protection of the law as guaranteed by the Constitution.

Section 916 represents a balancing of interests between a landowner who has been issued a building permit to develop his land and a person who is contesting his right to do so. Until the matter is adjudicated on the merits, this section requires the landowner to cease with his development plans, even though he has already been issued a permit. As a counterbalance to this infringement of the landowner's property rights, Section 916 provides that the landowner may petition a court to have the person contesting the development of his property post a bond as a condition to a continuation of his appeal. This bond requirement serves the purpose of providing financial protection for the victorious landowner who might sustain pecuniary loss as a result

of lengthy litigation while at the same time screening frivolous appeals from the administrative caseload.

We find that the State has an interest in pursuing both of the above objectives. We further find that the bond provision of Section 916 is a rational means to effectuate the above interests and is, therefore, not violative of the due process or equal protection[3] clause of the United States Constitution.

## Abuse of Discretion

Appellants' second argument is that, even if Section 916 is constitutionally sound, Judge HONEYMAN abused his discretion[4] by refusing to hear evidence on (1) the merits of the appeal, (2) appellants' financial ability to post a bond, and (3) Lamont's failure to avail itself of the provisions of Section 915 of the Pennsylvania Municipalities Planning Code, 53 P.S. §10915.

Judge HONEYMAN limited the hearing on Lamont's petition for the posting of a bond to the presentation of evidence relating to the amount of damages reasonably anticipated to be incurred by Lamont as a result of the delay in construction caused by the appeal. Given the wording of Section 916 and the purpose of the imposition of the requirement that a bond be posted, we do not comprehend how Judge HONEYMAN's limitation of evidence to the element of damages was an abuse of his discretion. As we stated previously, the purpose of the bond is the financial protection of the landowner from pecuniary loss as a result of the delay occasioned

---

[3] Since we find that neither a "fundamental right" nor a "suspect classification" is involved in this case, we must use the "rational relationship" test in judging whether Section 916 is violative of the equal protection clause. *See Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969).

[4] Section 916 provides that the granting of a request for a bond and its amount shall be in the sound discretion of the court.

by the appeal. The only evidence which is relevant to the achievement of this purpose is evidence as to the amount of damages which can reasonably be anticipated as a result of the delay.

The law is clear that, since the lower court's order of August 10, 1973, dismissing the appeal from the issuance of the building permit, was entered after appellants had appealed to this Court from the July 20, 1973, order of the lower court, the order of August 10, 1973, was improper. In the absence of a conflicting statutory provision, the court of first instance is without jurisdiction to proceed with a cause after the record thereof has been removed to an appellate court. *Corace v. Balint,* 418 Pa. 262, 210 A. 2d 882 (1965).

Therefore, the order of July 20, 1973, is affirmed and the order of August 10, 1973, is vacated and this matter is remanded to the Court of Common Pleas of Montgomery County to afford the appellants reasonable opportunity to post security in accordance with the terms and conditions of the order of July 20, 1973.

---

DISSENTING OPINION BY JUDGE ROGERS:

I am constrained to dissent from that portion of Judge MENCER's cogent and thorough opinion which holds that courts in adjudicating applicants' petitions for bonds pursuant to Section 916 of the MPC, 53 P.S. §10916, should not hear evidence concerning and consider the merits of the zoning appeal. In such a case, the evidence concerning the merits and the consideration to be given thereto need not be exhaustive, but the merits are, I believe, relevant and necessary to the exercise of the "sound discretion" required by Section 916 to be applied to whether a bond should be required and, if so, its amount. Indeed, if the only relevant consideration in such cases is the loss the petitioner will suffer as the result of the stay, one wonders why the Legislature gave the courts discretion to deny such petitions

altogether. I fear that today's holding will permit improvidently, capriciously, or indeed, corruptly, granted building and other zoning and planning permits to escape review for want of citizens aggrieved who are able to procure bond.

I would reverse and remand the record for further hearing at which evidence on the merits of the appeal as well as petitioner's loss might be received and considered in fixing the amount of bond.

President Judge BOWMAN and Judge BLATT join in this dissent.