Lower Southampton Township, Appellant, *v.* B. P. Oil Corporation, Appellee.

Argued October 8, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Marcel L. Groen,* with him *Simons, Kashkashian, Kellis & Groen,* for appellant.

*George T. Kelton,* with him *William J. Carlin* and *Begley, Carlin, Mandio, Kelton & Popkin,* for appellee.

OPINION BY JUDGE MENCER, December 13, 1974:

This is an appeal from an Order of the Court of Common Pleas of Bucks County which reversed a denial by the Lower Southampton Township Zoning Hearing Board (hereinafter the Board) of an application for a

special exception by BP Oil Corporation (hereinafter BP) to construct and operate a gasoline service station in a CC-Controlled Commercial district.

On June 23, 1970, BP became the equitable owner of the subject property, located at the intersection of Street Road and Central Avenue in Lower Southampton Township, which was zoned CC-Controlled Commercial under Section 600-B of the Township's zoning ordinance.

BP applied for a building permit on July 17, 1970, and a use permit on August 25, 1970, both of which were denied by the Zoning Officer because a special exception was required by Section 600-B for a gasoline service station use within the district. BP appealed these denials by a timely request for a special exception from the Board. Thereafter the Township Solicitor distributed to the Board of Supervisors a draft of a proposed ordinance (later to become Ordinance 191) designed to eliminate completely gasoline service station uses within CC-Controlled Commercial districts.

On October 8, 1970, a public hearing was held by the Board on the application for a special exception. At the beginning, BP, by agreement of counsel for the parties, was permitted to request a variance from rear and side yard setback requirements in the zoning ordinance.

A hearing to be held on the proposed ordinance above-mentioned was then publicly advertised on October 15, 1970, by the Board of Supervisors which subsequently adopted Ordinance 191 on November 5, 1970.

The Board denied the applications for a special exception and for a variance on November 16, 1970, reasoning (as to the variance) that the lot could be used as zoned, without the need for a variance to accommodate five-foot discrepancies in the rear and side yards, and that a proposed canopy had "the effect of cutting off the open space and, in essence, extending the build-

ing line to within nine feet from the right-of-way line." As to the request for a special exception, the Board concluded that the proposed use was not "an appropriate use of this land" because of "the adequacy and number of the similar uses in proximity to the proposed use" and because the use would detract from the use of the neighboring residential property.

BP appealed these decisions to the Court of Common Pleas of Bucks County on December 15, 1970. The Township Solicitor subsequently filed a Declaration of Position with the Court which raised no question as to the applicability of Ordinance 191 to the proceedings.

During the pendency of this appeal, BP filed another application seeking only a special exception and included therewith plans revised to eliminate the necessity for set-back variances: (1) the building was relocated upon the property so as to change the rear yard depth from 15 to 20 feet; (2) the offending 20 x 49 foot canopy was eliminated; and (3) one of the two pump islands beneath the canopy was eliminated and the other pump island beneath the canopy was moved from 15 to 20 feet clear of the right-of-way line.

At the hearing on this application held March 11, 1971, the Board, upon the recommendation of the Township Solicitor, refused to hear the case upon its merits because to do so would be the taking of additional evidence on the first application, which it could not do because of the pending appeal unless the court remanded for additional evidence. Then, contradicting itself, the Board also indicated that this application was an entirely *new* one because of the changes made in the plans and that therefore it was powerless to grant the special exception at that time because of the passage of Ordinance 191 (BP made no suggestion that Ordinance 191 was passed in order to defeat its proposed use of the property). No appeal was taken from this decision.

On July 12, 1971, the Court met informally pursuant to local court rule with counsel for BP and with the Township Solicitor after which, "upon the agreement of the parties," it entered an Order remanding the matter to the Board "for the purpose of receiving whatever additional evidence the parties may desire to present and a reconsideration thereby of the application in view of all of the evidence before the said Board."

Consequently, the Board held a hearing on January 25, 1972 (continuances had been requested by the applicant), at which time the Township Solicitor advised the Board that "It is my understanding that since this is a remand to take additional testimony, we will consider the entire record including the record made at the first hearing." At this hearing BP submitted for consideration the same revised plans which had accompanied its second special exception application.

The Board subsequently denied the special exception, reiterating its inability to grant the application because of the passage of Ordinance 191, and making the following four findings of fact:

"16. The plan presented at the January 25, 1972 hearing substantially differs from the plan presented at the October 8, 1970 hearing, and the Board views the second plan and application as being such a substantial difference as to amount to a new application.

. . . .

"18. An automotive service station would not be the highest and best use of this parcel since the parcel itself does not have the requisite depth. The appellant had considerable difficulty in placing the desired facilities on this particular lot.

"19. The intersection at Street Road and Central Avenue is guarded by a traffic light. However, this is a dangerous intersection and many accidents have occurred there.

"20. Service stations do generate unusual traffic patterns. There are two service stations at this intersection northeast of Street Road, and the establishing of a third service station at this intersection would contribute to additional traffic hazards in derogation of Section 1107-2 and 1107-7 of the Standards of Review."

In its discussion, the Board also stated:

"The Board also has rejected the request, as a special exception, on the merits. Considering a special exception, and in view of the Standards of Review set forth in the ordinance, the Board must be concerned with the question of traffic safety. Service stations do generate special traffic patterns. The testimony of the Chief of Police in opposition to the grant of this exception and the accident report that he filed to complete his testimony, indicate this to be a hazardous area, and the construction of the service station would not lessen but would aggravate this traffic hazard.

"The Board further must consider the appropriate use of the property. The tremendous difficulty which the appellant had in developing a plan which would fit the buildings and structures on the ground indicate that this lot is not just big enough for a service station."

The record thus completed, the matter was argued before the Court of Common Pleas, which took no additional testimony. On December 6, 1973, the Court reversed the decision of the Board with directions that the application for a special exception be granted. This appeal by the Township followed.

Our scope of review is limited to a determination of whether or not the Board committed an abuse of discretion or an error of law. *West Whiteland Township v. Sun Oil Company,* 12 Pa. Commonwealth Ct. 159, 316 A. 2d 92 (1974).

The Township claims that the special exception was rightfully denied because of the traffic hazards which will result and because the Board failed to realize that

Ordinance 191 was actually pending at the time BP first made application for a building permit and therefore it did not consider that application as so affected, but the revisions to the plans, made after actual adoption of Ordinance 191, were so substantial as to transform the second request into a new application which the Board was powerless to grant, and furthermore the denial of the second application was res judicata as to any consideration of the same plans at the third hearing upon remand.

BP submits that the lower court was correct in holding that (1) the pending ordinance doctrine does not apply to the facts of this case; (2) the final hearing before the Board was merely a continuation on remand of the first hearing and that the doctrine of res judicata was not applicable; and (3) the Board abused its discretion and committed an error of law in denying the special exception.

"It is clear that a property owner does not have a vested right to obtain a building permit for a use which is repugnant to an ordinance then 'pending.' See Varratti v. Ridley Township, 416 Pa. 242, 206 A. 2d 13 (1965). It is equally clear that an ordinance is 'pending' when a Borough Council proposes or resolves to consider a new zoning ordinance, makes the proposal open to public inspection and advertises that the proposal will be considered at a forthcoming public meeting. Boron Oil Company v. Kimple, 445 Pa. 327, 284 A. 2d 744 (1971); Mutzig v. Hatboro Board of Adjustment, 440 Pa. 455, 269 A. 2d 694 (1970); Cameron v. Greensburg, 3 Pa. Commonwealth Ct. 209, 281 A. 2d 271 (1971)." *Borough of Monroeville v. Effie's Ups and Downs*, 12 Pa. Commonwealth Ct. 279, 284, 315 A. 2d 342, 345 (1974).

Using these criteria, it is also clear that Ordinance 191 was not actually "pending" at the time BP first made application for its permits. Although a draft of

the ordinance was in preparation at the time of those applications, public notice was not given of the proposed ordinance until October 15, 1970, which was one week after the Board's first hearing of the appeal from the denial of those permits. Therefore BP's applications, and any proceedings conducted on appeal from their denial, must be governed by the ordinance existing at the time of application. Ordinance 191 was correctly not considered by the Board at the first hearing.

We believe the Board was also correct in refusing to accept evidence on the second application submitted with somewhat revised plans. *See Corace v. Balint,* 418 Pa. 262, 275-76, 210 A. 2d 882, 889 (1965), and *Driscoll v. Plymouth Township and Lamont Gear Company,* 13 Pa. Commonwealth Ct. 404, 412, 320 A. 2d 444, 448-49 (1974). The Board was incorrect, however, in considering this second application as a wholly *new* one. As the able opinion of Judge GARB notes, "[t]he mere fact it [BP] had rearranged the improvement to be placed upon the property so as to obviate the necessity for a variance certainly should not work to the detriment of the property owner and require that it be considered a wholly new application." As stated in R. Ryan, *Pennsylvania Zoning Law and Practice,* §9.4.11 (1970) : "Generally, amendments which do not change the issues should be permitted, but a modification in the applicant's drawings or plans which is significant in terms of the issues involved properly requires a remand to the zoning officer in cases which must arise by 'appeal' or a continued hearing in other cases, to afford the opposition time to prepare a defense. *The obvious exception is the amendment designed to conform the application to the requirements of the ordinance, as where an applicant who has been seeking three variances amends his plans to eliminate the need for one.* . . . Where, however, an amendment seeks only to change the theory of the zoning application, a remand

would seem unnecessary. Even where an appeal is required, if the material facts have been presented to the zoning officer, an appeal from his decision is still an 'appeal' even though the theory is changed: Nat'l Land & Investment Co. v. Easttown Twp. Board of Adjust., 419 Pa. 504, 215 A. 2d 597 (1965)." (Emphasis added.)

Here BP changed its theory from "special exception and variance" to merely "special exception," and even a cursory examination of the plans, before and after revision, reveals what we believe to be minor changes made to conform the plans to the requirements of the ordinance. The material facts had been presented to the zoning officer, who denied the applications because of the need for a special exception and who made no mention of the need for a variance. Although no evidence was received on the revised plans at the second "hearing," the opposition had time to, and did, prepare a defense on the same revised plans as submitted at the final hearing.

Nor was any final decision made on the second application so as to bar consideration of the revised plans at the final hearing. It is inconsistent of the Board to say that it refused to consider and make a decision on the second application and that now a final "decision" exists which is res judicata as to any consideration of the same plans at the final hearing. *See* R. Ryan, *supra,* at §9.4.17 and cases cited therein, and *McCarthy v. Township of McCandless,* 7 Pa. Commonwealth Ct. 611, 615-20, 300 A. 2d 815, 819-21 (1973).

Furthermore, the lower court, rather than taking additional evidence itself, remanded the matter to the Board "for the purpose of receiving *whatever evidence the parties may desire to present* and a reconsideration thereby of the application in view of all the evidence before the said Board." (Emphasis added.)

As to the merits of the case, we find support in the record for the following from Judge GARB's opinion:

"With regard to the question of increased traffic or change in traffic pattern appellant produced evidence of a traffic count taken at this intersection showing the number of vehicles passing during the normal rush hours and the number of vehicles turning from Central Avenue into Street Road. There was no evidence offered to contradict the specific figures given. There was further testimony from the appellant that gasoline service stations such as the one contemplated in this case do their business from transient traffic which would normally be upon the arteries passing before the service station and do not attract any new traffic for their business. This premise was agreed upon by two of the witnesses in protest, one of them being the chief of police of the municipality. It was further established that various other commercial uses which were permissible upon the premises even after the enactment of Ordinance 191 would in fact attract more traffic to the premises, which would not necessarily be transient traffic, than would the use contemplated herein. Furthermore, although this intersection is one often used by school children in walking to and from school the evidence reveals that there is a traffic signal light controlling the traffic at the intersection and that only children from sixth grade on up walk to and from school through this intersection. Those children in grades one to five are bused. From the protestants the evidence amounted only to generalities regarding the traffic and traffic patterns at this intersection but no competent evidence to demonstrate that the traffic in volume or pattern would in any way be changed by the location of this gasoline service station."

Not discussed below is the actual concentration of gasoline service stations around the subject property. It seems evident, however, that the proposed use will not cause an unwarranted impact at this intersection, certainly not the impact the proposed service station

would have had in *Blair v. Board of Adjustment,* 403 Pa. 105, 169 A. 2d 49 (1961), where there were already five service stations in the immediate 350 foot radius to the property. This is not to say, however, that the Board cannot consider whether the area is "already served by an adequate number of service stations and that the addition of another station would make a difficult situation even more difficult." *Marple Township Appeal,* 440 Pa. 508, 515, 269 A. 2d 699, 703 (1970) (four service stations within 1800 feet of the subject property).

"It is not *any* anticipated increase in traffic which will justify the refusal of a 'special exception' in a zoning case. The anticipated increase in traffic must be of such character that it bears a *substantial* relation to the health and safety of the community. A prevision of the effect of such an increase in traffic must indicate that not only is there a likelihood but a high degree of probability that it will affect the safety and health of the community, and such prevision must be based on evidence sufficient for the purpose. . . ." *Archbishop O'Hara's Appeal,* 389 Pa. 35, 54, 131 A. 2d 587, 596 (1957). (Emphasis in original.)

Or, as we stated in *Zoning Hearing Board v. Konyk,* 5 Pa. Commonwealth Ct. 466, 470-71, 290 A. 2d 715, 718 (1972), "The Legislature in providing for special exceptions in zoning ordinances has determined that the impact of such a use of property does not, of itself, adversely affect the public interest to any material extent in normal circumstances, so that a special exception should not be denied unless it is proved that the impact upon the public interest is greater than that which might be expected in normal circumstances. (Citations omitted.) The burden is on the township and the protesting neighbors, if there are any, to prove by evidence that the impact of the requested use in its normal op-

eration would be injurious to the public health, safety and welfare." (Citations omitted.)

There is evidence in the record that this evidently is a hazardous intersection but, after a careful review of the record, we cannot say that the protestants have established by " a high degree of probability" that the proposed gasoline service station will contribute to the number of future accidents at the intersection or otherwise "will affect the safety and health of the community." *Archbishop O'Hara's Appeal, supra* at 53, 54, 131 A. 2d at 596.

Affirmed.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent.

The court below, which did not receive evidence, concluded that the Zoning Hearing Board of Lower Southampton Township committed an abuse of its discretion and an error of law in denying a special exception for the location of a gasoline service station at the intersection of Central Avenue and Street Road.

As the majority here concedes, the intersection is shown by the record to be hazardous. School children cross it on foot, school busses stop there, at least 42 accidents, one fatal to a school child, have occurred there within the last several years, and the Township Police Chief believes that the proposed gasoline station will increase the existing danger to persons and property using the crossing. In addition, there are presently two service stations at the intersection and three others within a distance of one-half mile. I find no less justification for the denial of the special exception here than existed in *Marple Township Appeal*, 440 Pa. 508, 269 A. 2d 699 (1970) ; *Blair v. Board of Adjustment*, 403 Pa. 105, 169 A. 2d 49 (1961) ; *Township of Abington v. Rocks Associates, Inc.*, 11 Pa. Commonwealth Ct. 95, 312 A. 2d 98 (1973) ; and *Cherbel Realty Corp. v. Zon-*

*ing Hearing Board,* 4 Pa. Commonwealth Ct. 137, 285 A. 2d 905 (1972), which cases are not referred to by the court below and which hold that in special exception cases involving gasoline service stations and similar uses anticipated traffic congestion may properly be the sole basis for denial of the application.

I believe that the court below and the majority here have simply substituted their findings and conclusions for those of the Zoning Hearing Board which, as we held in *Gaudenzia, Inc. v. Zoning Hearing Board,* 4 Pa. Commonwealth Ct. 355, 287 A. 2d 698 (1972), should not be done unless the Board capriciously disregarded the evidence or manifestly abused its discretion.