543 A.2d 177

JoAnne Fischer et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare et al., Respondents.

Heard May 5, 1988, before President Judge CRUMLISH, JR.

*Stefan Presser,* American Civil Liberties Union of Pennsylvania, with him, *Seth F. Kreimer,* University of Pennsylvania School of Law, and *Kathryn Kolbert,* Woman's Law Project, for petitioners.

*Gregory R. Neuhauser,* Senior Deputy Attorney General, with him, *Kate L. Mershimer,* Deputy Attorney General, *John G. Knorr, III,* Senior Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., May 31, 1988:

Petitioners[1] have filed a motion for preliminary injunction in our original jurisdiction, 42 Pa. C. S. §761,

---

[1] Petitioners consist of named individuals suing on behalf of themselves and others similarly situated, a non-profit organization which represents rape victims' interests, suing on behalf of itself and all others similarly situated, a physician and a non-profit health organization who render medical services including abortions to the public generally and to persons receiving medical assistance from the Pennsylvania Department of Public Welfare.

to enjoin the enforcement of provisions of Act 31 of 1988 which amend Sections 3215(c)(2), (3), and 3215(j)(1)-(3) (Act 31)[2] of the Commonwealth's Abortion Control Act, 18 Pa. C. S. §§3201—3220.[3] These provisions prohibit

---

[2] For the purposes of this opinion, "Act 31" refers to only the provisions amending Sections 3215(c)(2), (3) and Sections 3215(j)(1)-(3). Sections 3215(c)(2) and (3) provide:

(c) Public funds.—No Commonwealth funds and no Federal funds which are appropriated by the Commonwealth shall be expended by any State or local government agency for the performance of abortion, except:

. . . .

(2) When abortion is performed in the case of pregnancy caused by rape which, prior to the performance of the abortion, has been reported, together with the identity of the offender, if known, to a law enforcement agency having the requisite jurisdiction and has been personally reported by the victim.

(3) When abortion is performed in the case of pregnancy caused by incest which, prior to the performance of the abortion, has been personally reported by the victim to a law enforcement agency having the requisite jurisdiction, or, in the case of a minor, to the county child protective service agency and the other party to the incestuous act has been named in such report.

Sections 3215(j)(1), (2) also provide that no public funds shall be paid unless the Commonwealth agency first receives signed statements from both the physician performing the abortion and the pregnant woman affirming that she is the victim of a rape or incest and that she has reported the incident to the appropriate law enforcement or child protective service agency. Lastly, Section 3215(j)(3) requires the Commonwealth agency to verify that the report was filed with the appropriate agency.

[3] Act 31 is the latest in a series of amendments to the Abortion Control Act through which the Pennsylvania General Assembly has exercised its legislative discretion to further its avowed interest in favoring childbirth over abortion, 18 Pa. C. S. §3202(c), without violating the mandates of the United States Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113, *reh'g denied*, 410 U.S. 959 (1973). We merely note that Pennsylvania's previous abortion legislation has consistently drawn impassioned societal reaction and has,

in part government subsidization of abortions except where pregnancy is caused by rape or incest and the victim personally reports the incident to a law enforcement or child protective agency prior to the medical procedure.

The ultimate legal issue in this litigation is whether Act 31's reporting requirements violate a woman's right to privacy pronounced in article I, section 1 of the Pennsylvania Constitution.[4]

At hearing on May 5, 1988, counsel for petitioners and the Commonwealth entered into 151 stipulations of fact and agreed to enter as evidence the notes of testimony, pages 80 through 202, produced at the February 7 and 8, 1984 hearings in *Fischer v. Department of Public Welfare,* 85 Pa. Commonwealth Ct. 215, 482 A.2d 1137 (1984). That case involved constitutional challenges to the Public Welfare Code (Code)[5] and the 1982

---

on several occasions, failed to survive constitutional scrutiny. For a brief history of Pennsylvania abortion legislation, see the discussion in *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747 (1986).

[4] This Court has previously ruled on requirements imposing a seventy-two hour limitation period in which to report the rape or incest. In a memorandum opinion, Judge MacPhail, sitting as Chancellor, granted a preliminary injunction of those requirments. That relief was affirmed by our Supreme Court in *Fischer v. Department of Public Welfare,* 497 Pa. 267, 439 A.2d 1172 (1982). Thereafter, this Court overruled preliminary objections in *Fischer v. Department of Public Welfare,* 66 Pa. Commonwealth Ct. 70, 444 A.2d 774 (1982). Judge MacPhail again sitting as Chancellor, issued a permanent injunction in *Fischer v. Department of Public Welfare,* 85 Pa. Commonwealth Ct. 215, 482 A.2d 1137 (1984). Commonwealth Court, sitting en banc, later sustained in part and overruled in part exceptions filed by respondents in *Fischer v. Department of Public Welfare,* 85 Pa. Commonwealth Ct. 240, 482 A.2d 1148 (1984). That decision was affirmed by our Supreme Court in *Fischer v. Department of Public Welfare,* 509 Pa. 293, 502 A.2d 114 (1985).

[5] Section 453 of the Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 1 of the Act of December 19, 1980, P.L. 1321, 62 P.S. §453.

Abortion Control Act. Additionally, petitioners presented the testimony of Dr. Ellen Frank, Ph.D., who had also testified at this Court's 1984 proceeding. The Commonwealth did not present any evidence on its behalf but did file an answer to interrogatories.

### Preliminary Injunction Standard

An injunction is properly granted only where petitioners establish a threat of immediate and irreparable harm and a clear right to relief. *Fischer v. Department of Public Welfare*, 497 Pa. 267, 439 A.2d 1172 (1982). Although a clear right need not be proved absolutely, *Valley Forge Historical Society v. Washington Memorial Chapel*, 493 Pa. 491, 426 A.2d 1123 (1981), we must emphasize that it is petitioners' burden to overcome the presumption of constitutionality which attaches to legislative enactments. *Driscoll v. Plymouth Township*, 13 Pa. Commonwealth Ct. 404, 320 A.2d 444 (1974).

The petitioners specifically contend that the requirements that women report they are victims of rape or incest and that the Department of Public Welfare verify such report prior to disbursing public funds for an abortion, are unconstitutional because they require disclosure of personal matters protected by the constitutional right to privacy.

Initially, it must be stressed that this case does not involve a woman's right to have an abortion. Rather, the issue is: Where the Commonwealth decides to offer public funds to women seeking to terminate pregnancies caused by criminal acts, may the Commonwealth require, as a condition precedent, vital information relating to those criminal acts?

### Evidence and Argument

The constitutional right to privacy includes two classes of interests: (1) freedom from interference in the

making of certain important personal decisions; and (2) freedom from the disclosure of certain matters which an individual deems so personal that publication adversely affects one's right to the pursuit of life, liberty and happiness. *In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73 (1980).

The first prong of this privacy right protects a woman from unduly burdensome state interference with the freedom to choose whether to terminate her pregnancy. *Roe v. Wade,* 410 U.S. 113, *reh'g denied,* 410 U.S. 959 (1973). However, in *Harris v. McRae,* 448 U.S. 297 (1980), the United States Supreme Court determined that a woman's freedom of choice during pregnancy does not carry with it a *constitutional* entitlement to federal or state monies necessary to avail herself of the full range of protected alternatives.

This Court has recognized that the second prong protects a woman's freedom to withhold certain information during pregnancy in the context of reporting requirements for subsidized abortions. *Fischer,* 85 Pa. Commonwealth Ct. 240, 482 A.2d 1148 (1984). This protection from disclosure is not absolute but is subject to limitation by countervailing state interests. *Denoncourt v. State Ethics Commission,* 504 Pa. 191, 470 A.2d 945 (1983).

It is this second prong which petitioners assert is to be protected here. Hence, to determine the extent of permissible governmental intrusion, the court must balance the individual's privacy right against the countervailing public interest. *Id.* In *Denoncourt,* Justice FLAHERTY, writing for the plurality, offered this balancing test:

> [The] government's intrusion into a person's private affairs is constitutionally justified when the government interest is significant and there

is no alternate reasonable method of lesser intrusiveness to accomplish the governmental purpose. Whether there is a significant state interest will depend, in part, on whether the state's intrusion will effect its purpose; for if the intrusion does not effect the state's purpose, it is a gratuitous intrusion, not a purposeful one.

*Denoncourt*, 504 Pa. at 199-200, 470 A.2d at 949.

The Third Circuit Court of Appeals, addressing the Pennsylvania constitutional right to privacy, reviewed the *Denoncourt* opinions and determined that Pennsylvania Courts would apply a flexible balancing test similar to that applied by Federal Courts. *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105 (3d Cir. 1987). The Third Circuit specifically relied on the flexible approach delineated in *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577 (3d Cir. 1980), where several factors affecting privacy were examined. They included the type of record or information requested from a person, the potential for harm in subsequent nonconsensual disclosures, the injury from disclosure to the relationship in which the information was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, the existence of an express statutory mandate, articulated public policy, or other identifiable public interest indicating that access is appropriate.

In support of their argument that the reporting requirements do not advance the Commonwealth's interests, the petitioners produced the testimony of Dr. Ellen Frank, Ph.D., a professor in psychiatry and psychology at the University of Pittsburgh School of Medicine, and an expert on the subject of psychological consequences of rape victimization. Her testimony was based upon her experience as the director of two major

research projects conducted over the last ten years.[6] These research projects consisted of studies of approximately 350 rape victims and another fifty to sixty adult survivors of childhood incest, the vast majority of whom came from Allegheny County, which includes the City of Pittsburgh, the second largest city in this Commonwealth.[7]

Dr. Frank testified that approximately fifty percent of all rape victims report the incident to police.[8] According to FBI statistics, rape is the most under-reported crime in the United States. Two major factors were cited by the doctor to explain this problem: First and most important, fear of retaliation by the assailant; and second, post-traumatic depression and anxiety.[9] Dr. Frank stated that a victim's depression and anxiety becomes exacerbated if a woman must report a rape because of perceptions of police ineffectiveness and insensitivity, fear of ridicule and of facing the assailant, and the ultimate predictable harassment by defense counsel at prosecution. She added that psychological impediments of reporting rape to public authorities are substantially magnified in the case of incest, due to the tender age of the victim and/or the fact that the assailant is by definition a relative. Petitioners argue that the reporting requirements of Act 31 will compel a woman to forego public subsidization in order to protect her from public scrutiny.

When discussing the development of fears in a rape victim who is deciding whether to report the crime to police, Dr. Frank acknowledged that the fear of retalia-

---

[6] N.T., 5/5/88, pp. 13-14.

[7] *Id.* at p. 14.

[8] *See also* stipulation of fact no. 19.

[9] N.T., 5/5/88, pp. 24-26.

tion is largely unfounded.[10] The fear is instilled by a threat made during the crime. It is nurtured and maintained during a woman's depressive state after the incident by an individual's recollection of motion pictures and television depiction dramatizing the circumstances of rape. Additionally, a victim's and the public's perception of the police treatment of a rape victim is not consistent with the professionalism found in large police departments today. It is the media, Dr. Frank acknowledged, which continue to misportray the investigation of rape reports and treatment of victims.[11]

The Commonwealth asserts that its purpose, in requiring the report of a rape or incest prior to the release of state monies for an abortion is "[t]o promote the Commonwealth's interests in prosecuting perpetrators of crime and deterring future crime and to enable the Department to determine whether public funds are being expended in an appropriate and lawful manner." Response to Petitioners' Interrogatories, p. 1. It cannot be disputed that the prosecution and deterrence of such heinous crimes as rape and incest are in the public interest. Indeed, it is a function of any government which prides itself on the rule of law to suppress repulsive criminal behavior which impacts not only its individual citizens but threatens a free society as a whole. The interest in preventing fraudulent claims so as to preclude unauthorized expenditure of Commonwealth funds, while not preemiment, is unquestionably a trust imposed upon sound fiscal governmental administration.

On cross-examination, Dr. Frank acknowledged that treatment of rape victims would effectively reduce depressive symptoms and enable victims to resume pre-assault functions within six to twelve weeks of treat-

---

[10] N.T., 5/5/88, p. 24.
[11] N.T., 5/5/88, p. 61.

ment.[12] The doctor also testified that the paralyzing symptoms of rape trauma syndrome dissipate after several weeks. Victims usually are diagnosed as clinically depressed after that period.

Finally, it should be said that the definition of rape is not always the same for criminal and clinical rehabilitation purposes. This is because rape is no longer recognized as it was in the common law or in earlier criminal statutes. This is not the result of semantical differences alone, but is a generalization stemming from an expanded criminal inclusion of the concept and/or the application of clinical diagnosis based upon growing public recognition of a woman's personal rights. These differing definitions make it extremely difficult to statistically exact the number and the nature of rapes reported to law enforcement agencies and accounts for the differing estimates as to the unreported incidents.

## DISCUSSION

To obtain preliminary relief, petitioners must establish, in addition to a clear right to legal relief, a threat of immediate and irreparable harm. *Fischer,* 497 Pa. 267, 439 A.2d 1172 (1982). As evidenced by the parties' stipulations, the legal issues and threat of harm presented here are similar to that addressed by this Court and our Supreme Court in the earlier *Fischer* decisions. In that prior abortion challenge, this Court struck down a reporting requirement demanding disclosure of a rape *within seventy-two hours* of the incident and reporting of incest within seventy-two hours of knowledge of pregnancy. We held those reporting requirements to be an unconstitutional violation of a woman's right to privacy because the time period would not increase the veracity

---

[12] N.T., 5/5/88, pp. 64-65.

of a claim nor motivate physically—or psychological-ly—damaged victims to make "fresh complaints." *Fischer*, 85 Pa. Commonwealth Ct. at 262, 482 A.2d at 1160.

Act 31 now requires a victim of rape to report to a law enforcement agency the occurrence of the crime and the identity, if known, of the perpetrator prior to the performance of an abortion. Additionally, a physician must obtain a non-notarized signed statement from the victim that she reported the crime and is aware of the punishment for false statements. The Commonwealth agency releasing public monies to the physician must verify the reporting with the local law enforcement agency.

Thus, the new reporting requirement materially differs from that previously examined. There is no *mandatory limited* reporting period, except as provided in Section 3210 of the Abortion Control Act, which prohibits abortion after a fetus is viable unless the operation is necessary to preserve maternal life or health. 18 Pa. C. S. §3210. In *Planned Parenthood Association v. Fitzpatrick*, 401 F. Supp. 554 (E.D. Pa. 1975), a federal district court held that the compelling point at which a state in interest of fetal life may regulate or prohibit abortion is not before the twenty-fourth week of gestation of the fetus.

We must examine this extended reporting period in light of the stipulations and the evidence of record. This examination will involve a balancing of the woman's right not to disclose certain personal matters and the state's avowed purpose to investigate, record and possibly prosecute rape incidents, and to ensure the proper expenditure of public funds. *Denoncourt*.

We begin this balancing by restating the well-settled principle that a statute is presumed constitutional. *Driscoll*. Additionally, when a statute appropriates

public funds for purposes not required by law, this presumption of validity maintains. *Harris.*

Act 31 is a declaration by the Commonwealth General Assembly that it has elected to provide funds for a purpose determined to be in the interest of the Commonwealth. Indeed, the establishment of this program is similar in purpose and operation to that of the Crime Victim's Compensation Board. Sections 477 to 479.5 of the Act of April 9, 1929, P.L. 177, *as amended,* added by the Act of July 9, 1976, P.L. 574, *as amended,* 71 P.S. §§180-7—180-9.5. That program makes public monies available to victims of crime who sustain medical and earnings losses and who promptly report such incidents.

In *Wyman v. James,* 400 U.S. 309 (1971), the United States Supreme Court held that a woman receiving Aid to Families with Dependent Children benefits was not entitled to such monies where she refused to permit a caseworker to visit her home. Justice BLACKMUN, writing for the majority, held that even if the visit were deemed a search within the protection of the Fourth Amendment, the "search" was not unreasonable when balancing the parents' privacy right and the state's interest in fulfilling a public trust and ensuring that its program achieved its proper result.

Prior to the effective date of Act 31, women seeking public monies for abortions necessitated by criminal acts would visit a physician, presumably inform him/her of the cause of the pregnancy, and together file applications to the Department of Public Welfare, which would release monies upon verification. Act 31 now requires a report to the local law enforcement agency prior to the medical operation.

Petitioners, through their argument and evidence, stress that this additional disclosure will infringe upon a woman's right not to disclose highly personal informa-

tion. Petitioners rely extensively upon the testimony of Dr. Frank, who opined that the required reporting to police would cause numerous depressive and anxiety reactions because of fear of retribution, perceptions of police ineffectiveness and insensitivity, ridicule, and the fear of trial. These fears would cause a victim not to seek public monies because of the reporting requirement.

This Chancellor is troubled in that Dr. Frank's valid studies reveal that a woman's decision whether to report a rape to law enforcement authorities or to keep to herself the intensely personal invasion of her privacy is clouded by media dramatization of rape incidents, which tend to magnify a woman's fears. However real these fears may be, this Chancellor must base his decision on the facts.

Act 31 differs from our prior *Fischer* decision in that the decision to seek public monies for an abortion need not be made within seventy-two hours of incident but some time before the twenty-fourth week of gestation. This extended period relieves a woman from the immediate paralysis of the rape trauma syndrome, as Dr. Frank described it, and allows a victim to seek counseling prior to reporting to police.

The stipulations and testimony disclose further that police treatment of women reporting rape has been improved by state education and training seminars. Although protection from disclosure may be difficult to achieve in one and two-person police departments, it is the parochial environments of those small communities which hinder total concealment of such noteworthy incidents. The stipulations reveal that police departments rarely, if ever, disclose the victims'. names.

Weighing these factors, and recognizing the presumptions of validity attaching to this funding statute, this Chancellor finds that petitioners have not at this

time established a clear right to legal relief as to the reporting of rape incidents. Act 31 is a new attempt by the legislature to attack the perpetrators of a most heinous crime. As Dr. Frank noted, modern and more sensitive police departments have eliminated the media perception of the treatment of rape victims. Depression and anxiety will continue to attach to victims unless the state is given the right to further a legitimate, necessary, and even critical state interest.

Law enforcement agencies must be wary, though, that Act 31 requires only the "reporting" of rape for women seeking public funds. We will assume, for purposes of this preliminary review, that law enforcement agencies will uphold a woman's constitutional privacy rights while the interview report is being conducted. The woman's desire to provide further information with her report must be respected. The Department of Public Welfare must carry out its verification procedure in a manner consistent with a woman's right not to disclose highly personal matters.

Turning our attention to the incest reporting requirement, this Chancellor is keenly aware of the acute fears felt by incest victims. However, the stipulations disclose that heightened national awareness of this crime, fostered by enhanced education and the imposition of mandatory reporting requirements, has increased the reporting of incest.[13] The Commonwealth's advancement in this area must be respected and not deterred. However, the reporting of incest for the purposes of obtaining public monies to terminate a pregnancy must be closely scrutinized so as not to invade one's right to privacy. Law enforcement and child protective authorities must act consistent with the child's constitutional rights, where victims of tender age are involved. Of course, this maxim applies to *all* victims.

---

[13] Stipulations, Nos. 93-95.

## CONCLUSION

This Chancellor is charged with an extraordinary responsibility. It is for him at this stage of the proceedings to examine the pleadings and evidence and make a judgment devoid of personal predisposition, societal influence but not without consideration of other prior evaluated decisions made at another place or time.

A law promulgated by the legislature pursuant to its constitutional authority is being challenged by individuals and their associations as infringing on their personal rights as established in this Commonwealth's Constitution.

A court must balance these interests and decide whether one infringes upon the other and, if so, which right must prevail. This Chancellor must weigh the factors herein at a preliminary stage, without benefit of completed evidence and full proceedings. Petitioners have to establish a right to legal relief, which necessitates a finding that personal rights override the interests the legislature is attempting to further.

The individual right asserted here is that of a woman, pregnant due to rape or incest, who wishes not to disclose the occurrence of a crime nor have information about it or her decision to have an abortion disseminated. The state, granting monies for a purpose not required by law, seeks in return a communication which may aid in the prevention or deterrence of future violent acts.

This Chancellor finds that the evidence produced at this point in the proceedings establishes that, although the individual right is important and valid, the state's right must be recognized as superior and upheld. The legislature here is respecting the individual's right and attempting to reinforce it by gathering information from participating claimants which will have the consequence

452

of aiding all victims in physical and psychological recovery.

This balancing of the parties' rights also entails a review of the potential harm to a victim and the Commonwealth citizenry. An individual does not have the right to have all of his or her constitutional freedoms funded by the government. *Harris.* Where public monies for a stated purpose will be released without the state receiving the full return it contemplates in appropriating monies, harm results to the general public. Additionally, the state must be permitted to protect society and its individuals from events which are the source of an invasion of their persons.

Petitioners have failed to establish a clear right to legal relief. Harm befalls the state and its society if a program is authorized which benefits the individual but frustrates the community interest sought to be attained. Importantly, petitioners' privacy rights can and will be respected by the public officials who have been charged with this sensitive trust as they dutifully apply the basic requirements of the Act.

The legislature, acting pursuant to constituency demands for more effective police protection against rising crime rates has in this act decided to combat the most under-reported crime. This act encourages victims, as the primary source of information, to join in their war against these crimes. The requirements of the law, which one might be unwilling to disclose, can be avoided simply by electing not to participate in the public program. We find no difference in principle whether the victim is affluent or poor.

Accordingly, this Chancellor finds that petitioners have failed to establish a clear right to legal relief. Moreover, the evidence establishes that if an injunction were issued, harm would be greater to the general public than to petitioners.

The motion to preliminarily enjoin the reporting requirements is denied.

ORDER

Upon consideration of petitioners' motion for preliminary injunction, it is ordered that said motion is denied.

Stenographic costs incurred for the May 5, 1988, hearing shall be borne equally by the parties.