## Spalla v. Robbins

C.P. of Blair County, no. 98 GN 4802.

*Craig E. Coleman* and *Kelly L. Enders,* for plaintiffs.
*Jillian P. Robbins,* pro se.
*Joseph P. Green,* for defendant Daniel Robbins.
*Craig R. Shagin,* for defendant Sirkka-Lisa Robbins.
*Joseph A. Ricci* and *Marc T. Levin,* for defendant Wadlington Ph.D.
*Ray F. Middleman,* for defendant Thomson M.D.
*James M. Horne,* for defendant PSU.
*Louis Long,* for defendant Echemendia Ph.D.
*Charles A. Fitzpatrick III,* for defendant Meadows Psychiatric Center.

GRUBB KOPRIVA, *J.,* October 28, 1999—This matter comes before the court on defendants' joint motion for protective order.

At this time, this court will forego a lengthy recitation of the factual procedural and discovery history[1] as it is previously set forth in our opinion of March 19, 1999.

---

1. We note in regard to discovery, plaintiffs have failed to comply with Pa.R.C.P. 440 regarding service of discovery to all defendants. Plaintiffs *must* serve discovery requests on all parties and have previously failed to do so. From this point forward, plaintiffs must comply with Rule 440 or sanctions will issue.

## PROCEDURAL HISTORY REGARDING INSTANT JOINT MOTION FOR PROTECTIVE ORDER

On May 10, 1999, the defendants, Dr. Echemendia, the Meadows Psychiatric Center, Dr. Thomson, the Pennsylvania State University, and Dr. Wadlington, filed a motion for protective order to protect the mental health records of Ms. Jillian Robbins. Also on May 10, 1999, the Pennsylvania State University filed a brief in support of the joint motion for protective order. Concurrently, Drs. Echemendia, Thomson and Wadlington, along with the Meadows Psychiatric Center and the Pennsylvania State University, filed a brief in support of their joint motion for protective order.

On May 11, 1999, this court set a date for oral argument for June 22, 1999. Defendant, Dr. Wadlington, filed a request for continuance which was granted on June 18, 1999, and the oral argument was rescheduled for September 13, 1999.

On August 24, 1999, plaintiffs filed a brief in opposition to defendants' joint motion for protective order. On September 9, 1999, the defendants, Dr. Wadlington, Dr. Thomson, Dr. Echemendia, the Meadows Psychiatric Center and Pennsylvania State University, filed a reply brief in support of their joint motion for protective order. On September 13, 1999, this court conducted an oral argument on defendants' motion for protective order.

On September 16, 1999, the plaintiffs filed a supplement to their brief in opposition to the defendants' joint motion for protective order. On September 20, 1999, the defendants, the Meadows Psychiatric Center and Dr. Thomson, faxed to this court letters which served as rebuttal to the plaintiffs' supplemental brief in opposition to defendants' joint motion for protective order.

On September 22, 1999, the plaintiffs filed a second and third supplement to their brief in opposition to defendants' joint motion for protective order.

On September 29, 1999, the defendant, Wilbur Wadlington Ph.D., filed a supplemental brief in support of joint motion for defendants' protective order. On September 30, 1999, this court received telefax communication on behalf of Dr. Thomson adopting the supplemental brief filed by Attorney Ricci on behalf of Dr. Wadlington. Also on September 30, 1999, the Pennsylvania State University, Dr. Echemendia and the Meadows Psychiatric Center filed supplemental briefs in support of the joint motion for protective order.

Having reviewed all of the filings and briefs in this matter and conducted oral argument, we now proceed to disposition.

## DISCUSSION

Generally, the defendants argue the mental health records of Jillian Robbins fall under three tiers of protection. The defendants argue the patient's records are protected under (1) the Mental Health Procedures Act and the Mental Health Manual (found at 50 Pa.C.S. §7101 et seq. and 55 Pennsylvania Code §5100 et seq., respectively), (2) the Pennsylvania Judicial Code (found at 42 Pa.C.S. §5944), and (3) the Pennsylvania Constitution (Article I). This court will deal with each tier of protection separately.

## MENTAL HEALTH PROCEDURES ACT AND THE MENTAL HEALTH MANUAL

Initially, we must note the Mental Health Procedures Act, as implemented through the Mental Health Manual regarding confidentiality of mental health records, ap-

plies only to the records of persons seeking, receiving or having received mental health services from any facility as defined in section 103 of the Act (50 P.S. §7103). 50 P.S. §7103 specifically states:

"This Act establishes the rights and procedures for *all involuntary treatment* of mentally ill persons, whether inpatient or outpatient, and for *all voluntary inpatient treatment* of mentally ill persons. 'Inpatient treatment' shall include all treatment that requires full- or part-time residence in a facility. For the purpose of this Act, a 'facility' means any mental health establishment, hospital, clinic, institution, center, day care center, base service unit, community mental health center, or part thereof, that provides for diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients." (emphasis added)

Therefore, this statute does not provide confidentiality protection for any "voluntary outpatient" treatment which has been sought by Ms. Robbins. Defendants strongly argue under *Rost v. State Board of Psychology,* 659 A.2d 626, 629 (Pa. Commw. 1995) the psychotherapist has a responsibility to protect the confidentiality of the records of a patient. However, we find this argument goes to the duty of a psychotherapist without a court order, and therefore, is inapplicable and moot in the matter at hand because the release is under order of court. At this stage in the proceedings, evidence does not indicate what nature of treatment was provided to Jillian Robbins by the psychiatric defendants. In the event Ms. Robbins' treatment was on a voluntary outpatient basis, the Mental Health Procedures Act and the Mental Health Manual do not apply. However, even in the event Ms. Robbins is determined to be a member of the target population for protection under the Act, we find the request for protective order fails.

First, defendants argue the executed release obtained by plaintiffs from Jillian Robbins is insufficient under the Mental Health Manual (55 Pennsylvania Code §5100.34(f)). We have reviewed the authorization for release of information as executed by Jillian Robbins on September 8, 1999. (See exhibit B to the supplemental brief of the Pennsylvania State University and Dr. Echemendia in support of the joint motion of defendants for protective order.) Defendants are correct in their assertion this authorization falls short of the statutory requirements. Specifically, the Mental Health Manual indicates the authorization should contain a place to record a verbal consent to the release of information given by a person physically unable to provide a signature and/or a place for the signatures of two responsible persons who witnessed that the person understood the nature of the release and freely gave his or her verbal consent must be present. 55 Pennsylvania Code §5100.34(f)(7). Further, the release did not specifically state the consent is revocable at the written request of the named patient, or at the oral request of the named patient as in paragraph 7 of the Manual (as referenced above).

Even though the release may be defective, 55 Pennsylvania Code §5100.35 governs the release generally of mental health records to the court. It specifically states:

"(b)(1) Whenever a client/patient's records are subpoenaed or otherwise made subject to discovery proceedings in a court proceeding, other than proceedings authorized by this Act, and the patient/client has not consented or does not consent to release of the records, no records should be released in the absence of an additional order of court. The records officer, or his designee, is to inform the court either in writing or in person that, under statute and regulations, the records are confi-

dential and cannot be released without an order of the court. Neither the records officer nor the facility director has any duty to oppose a subpoena beyond stating to the court that the records are confidential and cannot be released without order of the court; however, nothing in this section shall be construed as authorizing such a court order."

Therefore, the Mental Health Manual specifically authorizes the release of records to a court in proceedings which are not mental health court proceedings so long as the mental health providers have received a court order that the records shall be released. In fact, the Honorable Charles Brown Jr. ordered Dr. Wadlington to release all mental health records of Jillian Robbins on August 20, 1997 in the underlying criminal matter. Parenthetically, we note no objections or appeals were filed to Judge Brown's order. Similarly, under this exception to the Act, this court has the authority to release records which would be relevant to the civil action at hand. In summary, the confidentiality protection provided under the Mental Health Manual and the Mental Health Procedures Act is subject to court discretion, even in the absence of a sufficient authorization.

However, as previously mentioned, the defendants do not fall under the protection of the Mental Health Procedures Act and the Mental Health Manual if they provided treatment on a voluntary outpatient basis.

## JUDICIARY CODE

The defendants next argue the information is privileged under the Judiciary Code in a manner which is similar to the attorney/client privilege. Plaintiffs respond Ms. Robbins has waived her privilege of confidentiality based on her previous actions coupled with disclosure of her

mental health records and her execution of the authorizations.

We have reviewed the transcript from Ms. Robbins' sentencing hearing held May 22, 1998, and find credible evidence of her waiver of confidentiality, as well as her competency to complete that waiver.

Initially, we note Ms. Robbins' counsel, at the time of sentencing, admits Ms. Robbins had recently been discharged from the Meadows Psychiatric Center.

"In fact, counsel states, I can tell the court at the time she went to the HUB lawn she was acutely suicidal. She had just been recently discharged from the Meadows. For whatever reason the Meadows discharged her, I'll never know. She was crying out for help." (Sentencing hearing transcript, p. 22, ll. 21-25.)

Further, at the time of sentencing, Ms. Robbins noted she had been seen by both Drs. Wadlington and Thomson as follows:

"She had also been seeing a psychologist, Wilbur Wadlington, on a regular basis. She was crying out to him for help. She was also seeing psychiatrist Katherine Thomson on a regular basis, and she was crying out to her for help." (Sentencing hearing transcript, p. 22, l. 25 to p. 23, l. 4.)

All criminal proceedings are a matter of public record. Still further, we have reviewed exhibit E to plaintiffs' brief in opposition to the defendants' joint motion for protective order, specifically a videotape of an interview given by Jillian Robbins with WPXI television station in Pittsburgh. In the interview, Ms. Robbins speaks to the reporter regarding her mental health treatment and the symptoms of her mental state surrounding the incident in question.

We also look to the authorizations executed by Ms. Robbins, and we note they do specifically address the

purpose for the documents, as well as her understanding of the nature and purpose for the release, the recitation of the fact that her consent is voluntary and subject to revocation at any time. We note no evidence contradicts the fact Ms. Robbins freely executed these documents. Still further, we note plaintiffs' counsel included a separate sheet in the letter of May 30, 1999, which would have allowed Ms. Robbins to refuse to sign the authorizations granting the law firm of Caroselli, Beachler, McTiernan and Conboy access to her psychological records. Ms. Robbins did not execute the refusal to sign authorizations, but rather executed the authorizations themselves, obtained the witness signature of her roommate, Ms. April Fisher, and returned the authorizations voluntarily. Although the release may be deficient under the Mental Health Procedures Act and Mental Health Manual criteria, it further evidences Ms. Robbins' waiver of the confidentiality privilege.

The defendants also argue Ms. Robbins was not capable of waiving the confidentiality privilege based on her current psychiatric problems. The sentencing transcript indicates she has multiple diagnosis of borderline personality disorder, post-traumatic stress disorder, disassociative identity disorder (formerly known as multiple personality disorder), and severe depressive episodes. (Sentencing transcript, testimony of Dr. Dougherty, p. 8, l. 25 to p. 9, l. 3.) However, Dr. Dougherty goes on to attest to Ms. Robbins' competency as follows:

"My opinion is that she understands her rights and is competent to proceed. She is currently on a number of psychotropic and anticonvulsive medications, which have ameliorated many of the problems. She is in contact with reality. She knows who she is, where she is. She knows the various members of the courtroom and their roles,

and she has the ability to communicate with her attorney." (Sentencing transcript, p. 9, ll. 17-23.)

Still further, Dr. Dougherty was asked his opinion as to whether any of her psychiatric disorders were affecting the voluntary nature of her guilty plea on that day, and he specifically stated they did not. (Sentencing transcript, p. 10, ll. 5-6.) He went on to note the medications being taken by Ms. Robbins were helping her to maintain her contact with reality and ameliorate the previously diagnosed problem, and that to a reasonable degree of psychological certainty, she was competent to proceed with her guilty plea. (Trial transcript, p. 10, ll. 7-16; see also, p. 36, ll. 17-23, and p. 27, ll. 14-21.) Still further, Judge Brown, during the sentencing, conducted a colloquy of Ms. Robbins through which the court determined Ms. Robbins was competent to enter the plea agreement. (Sentencing hearing transcript, pp. 12-14.)

This court notes the criminal proceedings for Ms. Robbins resulted in substantial and serious consequences. Her sentencing inflicted restrictions to her liberties and freedoms, which are held of highest value in this country. The proceeding at hand deals with Ms. Robbins' property, which while highly valued, is held to a slightly lesser standard than criminal proceedings (as seen in the varying burdens of proof between criminal and civil proceedings). Therefore, Judge Brown's determination of her competence and the testimony of Dr. Dougherty weigh heavily in determining Ms. Robbins' competence to waive the confidentiality privilege in a civil proceeding.

Still further in regard to waiver, we note the defendants cited the distinction between the cases of *Commonwealth v. Santiago,* 541 Pa. 188, 662 A.2d 610 (1995) and *Commonwealth v. Breakiron,* 524 Pa. 282, 571 A.2d 1035 (1990). Specifically, defendants correctly state in

*Santiago,* the psychotherapist/patient privilege was waived by the defendant's pursuit of an insanity defense. In contrast, in *Breakiron,* the patient chose not to use reports of the psychotherapist during the testimony by the psychotherapist at his criminal trial, and therefore maintained the privilege. However, Ms. Robbins' situation is similar to *Santiago* in that Ms. Robbins did indeed introduce evidence at the time of her sentencing in regard to the Meadows Psychiatric Center, Dr. Wadlington and Dr. Thomson. (Sentencing transcript, pp. 22-23; see also, above.) Taking these factors together, we find there is competent waiver of the psychotherapist/patient privilege on behalf of Ms. Robbins.

## CONSTITUTIONAL PROTECTION

Lastly, the defendants argue Ms. Robbins' mental records are protected under Article I of the Pennsylvania Constitution. Specifically, it appears defendants are referring to Article I, Section 1 regarding the right of privacy. The right to privacy includes two classes of interest: freedom from interference in making of certain important personal decisions; and freedom from disclosure of certain matters which the individual deems so personal that publication adversely affects one's right to pursuit of life, liberty and happiness. *Fischer v. Commonwealth of Pennsylvania, Department of Public Welfare,* 116 Pa. Commw. 437, 543 A.2d 177 (1988). Under Pennsylvania law, a patient's right to confidentiality of psychiatric records is protected by the constitution. *Hahnemann University Hospital v. Edgar,* C.A. 3 (Pa.), 74 F.3d 456 (1996). However, it is well-known that an individual may waive their rights through conduct or through explicit written waiver. In fact, even an individual who is uneducated and illiterate can validly waive his constitutional

rights when he can give a coherent narrative of facts and can otherwise demonstrate necessary intelligence to understand and respond to questions asked of him. *Commonwealth v. Tribblett,* 242 Pa. Super. 164, 363 A.2d 1212 (1976). In the case of Jillian Robbins, she is obviously literate and intelligent, and was deemed competent at the time of her guilty plea. Therefore, she is also competent to waive her constitutional right to privacy in regard to her psychiatric records. In fact, Ms. Robbins' sentencing hearing and her written waiver do constitute a voluntary and knowing waiver of her constitutional rights. Therefore, defendants' argument regarding constitutional protection falls short.

In light of the above opinion, the court will enter the following:

## ORDER

And now, October 28, 1999, this matter having come before the court on defendants' joint motion for protective order, it is hereby ordered, directed and decreed defendants' joint motion is denied. Jillian Robbins' psychiatric records are discoverable in this matter.