## EAST ALLEGHENY COMMUNITY COUNCIL

### v.

## ONCOLOGY–HEMATOLOGY ASSOCIATES, MPCGS Associates and AOR Real Estate Co., Inc. and City of Pittsburgh,

### Appeal of: Oncology–Hematology Associates, MPCGS Associates and AOR Real Estate Co., Inc.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 20, 2001.

Decided Aug. 30, 2001.

David F. Toal, Pittsburgh, for appellants.

Arnold M. Horovitz, Pittsburgh, for appellee.

Before COLINS, Judge, McGINLEY, Judge, and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Oncology–Hematology Associates, MPCGS Associates and AOR Real Estate Company, Inc. (Landowners) appeal from an order of the Court of Common Pleas of Allegheny County that affirmed the decision of the Pittsburgh Zoning Board of Adjustment (ZBA) that granted the protest appeal filed by East Allegheny Community Council (EACC) and denied Landowners' request for a special exception for shared parking. We affirm.

Landowners are the current owners of two separate zoning lots that contain a nine-unit apartment building (housing parcel) and an abutting medical office building (office parcel), which are located in the Northside area of the City of Pittsburgh in a RM–3 zoning district (Residential Multi–Unit Moderate Density District). The housing parcel's current occupancy permit provides for 15 parking spaces on the housing parcel's lot and allows no more than nine spaces to be used by non-occupants. The office parcel is a legal non-conforming use with a current occupancy permit that allows for four parking spaces on the lot.

Landowners' predecessors-in-title filed an application and posted proper notice for approval under the zoning administrator's exception provision in the Pittsburgh Urban Zoning Code (Zoning Code) for a shared parking plan for 21 spaces on the housing parcel to serve both the housing parcel and the office parcel.[1] Although

---

1. The shared parking proposal is designed to connect the housing parcel's existing 15 stall parking area with the office parcel's four stall parking area with an increase in the com-

EACC filed an objection letter, the zoning administrator approved the plan. EACC then filed a protest appeal from this approval to the ZBA. Landowners filed both a motion to quash EACC's appeal and an application for the grant of a special exception. The matters were consolidated and a hearing before the ZBA was held on December 9, 1999. On March 24, 2000, the ZBA issued its decision, denying Landowners' motion to quash and the request for a special exception. The ZBA also reversed the zoning administrator's grant of an exception to Landowners for the shared parking plan.

Landowners appealed to the trial court, which affirmed the ZBA's decision. The trial court held that the administrator had no authority to approve the shared parking facility because the plan involved more than ten parking spaces. Section 914.07.-D.1 and 2 of the Zoning Code. The trial court also held that Landowners failed to satisfy the specific threshold criteria required for the grant of a special exception to allow the shared parking plan, citing Section 922.07.D.1 of the Zoning Code, which states in pertinent part:

> The Zoning Board of Adjustment shall approve Special Exceptions only if (1) the proposed use is determined to comply with all applicable requirements of this Code and with adopted plans and policies of the City and (2) the following criteria are met. . . . .

The trial court explained that because subsection (1) was not met, the ZBA correctly declined to evaluate the criteria listed in subsection (2). The trial court, noting that Landowners sought the shared parking plan for the office use within the residential district, specifically stated that:

> [Landowners'] application for shared parking fails to satisfy the above threshold inquiry because the property is situated in a residential zoning area, RM 3, yet, the most intensive use of the proposed shared parking lot is for the legal non-conforming medical office. This proposal falls short of meeting the Zoning Classification for shared parking found at Section 914.07.G.[1(a)(2) ] of the Pittsburgh Urban Zoning Code, which states:
>
> > Shared parking areas shall be considered accessory uses of primary uses that the parking spaces are intended to serve. Shared parking areas shall require the same or a more intensive zoning classification than that required for the most intensive of the uses served by the shared parking area.

(Trial court opinion, p. 4). The trial court further discussed the intent of Section 914.07.G.1(a)(2) of the Zoning Code finding that it was enacted to "prevent the encroachment of office/commercial use parking facilities, shared or otherwise, into residentially zoned districts and that deviation from such intention is tantamount to a 'use variance' not within the jurisdiction of the Administrator nor of the Board." (Trial court opinion, p. 4).

◼ Landowners now appeal to this Court,[2] arguing that the ZBA erred in: (1) denying the special exception for the shared parking facility because granting the request would render the office parcel

---

bined parking area to accommodate a total of 21 parking stalls on the housing parcel plus the existing four office parcel stalls for a total of 25 parking stalls.

**2.** Our scope of review of a decision of a zoning hearing board where a trial court takes no additional evidence is limited to a determination of whether the zoning hearing board abused its discretion or committed an error of law. *Valley View Civic Assoc. v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

more conforming to the residential district in which it is located; (2) interpreting the Zoning Code as requiring the location for the shared parking facility to be commercial in order to be eligible for a special exception; (3) ignoring the legislative intent of the Zoning Code which allows shared parking facilities for multiple uses; (4) interpreting the Zoning Code as prohibiting a zoning administrator from exercising jurisdiction over Landowners' application for six additional parking stalls under its shared parking plan; and (5) depriving Landowners of their federal and state constitutional rights to a full and fair hearing by denying their motion to quash and allowing TEAC to raise new issues in its appeal to the ZBA.[3]

Landowners rely on Section 914.07.G.2 of the Zoning Code as support for their proposal, contending that the ZBA incorrectly interpreted the Zoning Code as requiring the parking facility to be zoned commercial in order that the requested special exception be issued. Section 914.07.G.2 states:

> The Zoning Board of Adjustment shall be authorized, in accordance with the Special Exception provisions of Sec. 922.07, to consider and approve any alternative to providing off-street parking spaces on the site of the subject development if the applicant demonstrates to the satisfaction of the Zoning Board of Adjustment that the proposed plan will result in a better situation with respect to surrounding neighborhoods, citywide traffic circulation and urban design than would strict compliance with otherwise applicable off-street parking standards.

Based on this section, Landowner argues that the ZBA has the authority to grant relief from the application of Section 914.07.G.1(a)(2) of the Zoning Code, which requires the zoning classification to be equal to or greater in intensity. Thus, in light of the fact that the proposed parking plan is merely a modification of a lot already devoted to parking, Landowner believes the ZBA erred as a matter of law by not following the dictates of Section 914.07.G.2.

■■■ We recognize that Section 914.07.G.2 allows the ZBA to modify strict compliance; however, we do not believe that the ZBA abused its discretion in refusing to do so. Even though Section 914.07.G.1(a) of the Zoning Code "encourage[s] efficient use of land and resources by allowing users to share off-street parking facilities for multiple use developments or for uses located near one another and that have different peak parking demands or different operating hours," the ZBA interpreted the intention of Section 914.07.G.1(a)(2) as not allowing office and/or commercial use parking facilities in residentially zoned districts, which would be the result here. Because "construction of a statute by those charged with its execution and application is entitled to great weight and should not be disregarded or overturned except for cogent reasons," we will not overturn the ZBA's ruling. *Willits Woods Assoc. v. Zoning Board of Adjustment,* 138 Pa.Cmwlth. 62, 587 A.2d 827, 829 (1991) (quoting *Longo Liquor License Case,* 183 Pa.Super. 504, 132 A.2d, 899, 901 (1957)).

Following the same line of reasoning, Landowners also argue that the ZBA ignored the legislative intent espoused in Section 914.07.G.1(a) that encouraged shared parking facilities. Landowners recognize that the ZBA wants to prohibit deceptive parking arrangements that

---

**3.** The present Zoning Code was enacted in 1998 and became effective on February 26, 1999. We have found no case law interpreting the sections of the Zoning Code at issue in the matter before this Court and, therefore, note that this case is one of first impression.

would increase existing non-conforming uses in residential areas. However, Landowners contend that no deception or fraud is involved here and suggest testimony presented at the ZBA hearing evinces that their plan would in fact improve the attractiveness of the parking area, making it more compatible with the surrounding neighborhood, would not increase traffic and would not adversely impact the area. Although we note that Landowners have asserted the advantages of their plan, again we are limited by our scope of review and must refrain from acting as a super zoning board. Here, the ZBA has the power to interpret the various provisions of the Zoning Code and having provided cogent reasons for their decision, which conform to policy statements in the Code, we must abide by the dictates in *Willits*. However, despite our decision in this regard, we express no opinion as to the merits of Landowners' shared parking plan.

Landowners also argue that the ZBA erred in denying the special exception because granting it would render the office parcel more conforming to the residential neighborhood in which it is located. Although recognizing the ZBA's fear that more commercial parking would encroach on residential neighborhoods, Landowners contend that the ZBA ignores the office parcel's non-conforming status, indicating that if a medical building were erected today on the office parcel it would require 22 parking spaces. By adding the six stalls in the shared parking plan, Landowners suggest that the office parcel would be more conforming, not less conforming as asserted by EACC. Landowner also relies on Section 921.01.A of the Zoning Code, which states that the City's policy is to bring non-conforming uses, structures or lots into compliance with existing regulations as is reasonably possible.

Landowners, however, overlook Section 921.01.C of the Zoning Code that requires that non-conforming properties are subject to all applicable regulations of the Zoning Code, which includes the requirement that the parking area have the same or more intensive zoning classification of the most intensive of the uses served by the parking area. The ZBA determined that despite Landowners' policy argument, it could not overlook the specific requirement set forth in the Zoning Code. We conclude that the ZBA did not err as a matter of law by concluding that Landowners' plan did not comply with all applicable requirements.

■ Landowners also argue that the ZBA incorrectly determined that the zoning administrator did not have jurisdiction over its application for an exception for the six additional parking stalls requested in it plan. Section 914.07.D.1 of the Zoning Code gives the zoning administrator the jurisdiction to approve parking plans that involve ten or fewer spaces. The ZBA concluded that the plan involved 21 spaces, i.e., the 21 spaces on the housing parcel that would be shared by both the residential and office use, not just the additional six added to the housing parcel's existing 15 stalls. We hold that the ZBA did not err in its interpretation of the Zoning Code as to the zoning administrator's jurisdiction.

■ Lastly, Landowners argues that their constitutional rights were violated because the ZBA denied both their motion to strike EACC's appeal from the administrator's decision and their request to limit issues. Specifically, Landowners contend that EACC's objection letter to the administrator outlined three reasons why Landowners' application should be denied, but that the ZBA allowed EACC to raise additional issues in the proceeding before the ZBA, giving EACC an unfair advantage. We disagree. The hearing held before

ZBA was *de novo*, allowing each party to participate and raise any issues they wished. Therefore, we conclude that no constitutional violations were committed.

For the reasons stated above, we affirm the trial court's order.

### ORDER

AND NOW, August 30, 2001, the order of the Court of Common Pleas of Allegheny County in the above-captioned case is affirmed.