The FRIENDSHIP PRESERVATION GROUP, INC., a Pennsylvania Corporation, AZ, Inc., a Pennsylvania Corporation, D.B.A. Cafe Sam and Andrew Zins, an individual,

v.

ZONING BOARD OF ADJUSTMENT OF THE CITY OF PITTSBURGH and UPMC Shadyside,

Appeal of the Friendship Preservation Group, Inc., AZ Inc., and Andrew Zins.

Commonwealth Court of Pennsylvania.

Argued June 10, 2002.

Decided Oct. 7, 2002.

Kenneth R. Stiles, Pittsburgh, for appellants.

William R. Sittig, Jr., Pittsburgh, for appellee, UPMC Shadyside.

BEFORE: McGINLEY, Judge, and SMITH–RIBNER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Friendship Preservation Group, Inc. (Friendship Preservation), AZ, Inc. and Andrew Zins (Appellants) appeal from the order of the Court of Common Pleas of Allegheny County that affirmed the order of the Zoning Board of Adjustment of the City of Pittsburgh (Board) denying the protest appeal filed by Friendship Preservation, Kenneth Stiles and Zins from the Zoning Administrator approval of a revised parking plan for the proposed University of Pittsburgh Cancer Institute Facility (UPCI Facility). The facility is being constructed by the University of Pittsburgh Medical Center Shadyside Hospital (UPMC Shadyside).[1]

I

UPMC Shadyside filed an application for occupancy/building permit for the UPCI Facility on January 19, 1999, which described it as a new three-story and five-story structure for the University of Pittsburgh Cancer Institute to be utilized as administrative offices, research laboratories, clinics and medical offices with a 500–

1. Appellants state six questions on appeal: whether the Board erred by granting an automatic 20 percent reduction for the parking requirement; whether the Zoning Administrator exceeded his authority by approving the parking proposal because the review and approval procedure for large facilities with ten or more spaces is delegated to the Board; whether the Board could approve the use of the UPMC Shadyside Medical Center Parking Garage for the proposed facility; whether the Board could approve use of two so-called Nichols Lots for the proposed facility; whether the Board erred in approving a reduction of the on-site parking garage from 500 to 149 stalls because the proposal significantly modified the issues and plans presented at the original hearing; and whether the Board erred in approving the second application for the facility because the Board did not follow its own rules of procedure.

stall underground parking garage, located between Baum Boulevard and Centre Avenue and connected to UPMC Shadyside by a transparent elevated bridge above Centre Avenue. The Zoning Administrator denied the application because it did not comply with a height restriction in the district of 45 feet, and UPMC Shadyside applied for variances for heights of 66 feet and 53 feet. By order of March 5, 1999, in Zone Case No. 23 of 1999, the Board granted the requested height variances. No objections had been filed and no appeal was taken.

On February 26, 1999, a new Zoning Code (1999 Code) became effective, supplanting the previous one (1958 Code). Zone Case No. 23 was decided under the 1958 Code because it was filed while that code was still in effect. UPMC Shadyside proceeded with development plans. Based on a traffic study of the proposed building with a 500–stall underground garage and a geotechnical study of the site, it concluded that building a garage more than one story deep would be rendered prohibitively expensive because of the type of soil present at that depth and that establishing the entrance/exit for such a large garage at Centre Avenue would cause queuing problems in the garage and traffic problems on the street. On July 19, 1999, UPMC Shadyside submitted a proposal to the Zoning Administrator to reduce the underground parking garage from 500 to 149 spaces and to provide additional parking off-site. The Zoning Administrator referred the matter to the Board, and hearings were conducted on August 19 and September 9, 1999 at which Friendship Preservation and Zins, owner of the nearby Cafe Sam, appeared in opposition because they thought that the facility would not have adequate on-site parking, resulting in a detrimental effect to the neighborhood. The Board issued a decision October 1, 1999 in Zone Case No. 192 of 1999,

concluding that under the 1958 Code 394 parking spaces were required and that if UPMC Shadyside could satisfy the Zoning Administrator that such spaces were available, then modification would be proper. The objectors appealed.

UPMC Shadyside submitted a plan to the Zoning Administrator on October 1, 1999, and he approved it that day. The plan provided for 183 spaces in the parking garage under the UPCI Facility (140 lined spaces and 43 valet spaces), 24 spaces in each of two abutting parcels near the new facility owned by UPMC Shadyside and known as the Nichols Lots and 208 spaces within the existing UPMC Shadyside Medical Center Parking Garage (UPMC Shadyside Garage) (100 lined spaces and 108 valet spaces). The Board denied the objectors' appeal by decision of February 7, 2000 in Zone Case No. 238 of 1999. It noted that the Zoning Administrator established that Centre Avenue is the sole means of ingress and egress for the garage under the UPCI Facility, that UPMC Shadyside is not permitted to install a traffic light at that point, that an increase in the number of parking spaces in the UPMC Shadyside Garage is preferable, that there is an existing traffic signal on Centre Avenue by that garage and that there is a high concentration of permit parking districts in the vicinity of the UPCI Facility.

The Board concluded that the Zoning Administrator did not err in approving an Administrator Exception for the Nichols Lots pursuant to Section 914.07.G.1 of the 1999 Code in that the off-street parking spaces are located no farther than 1000 feet from the UPCI Facility and the zoning classification for those lots is the same as that for the proposed uses for the facility. It further concluded that the Zoning Administrator did not err in granting Administrator Exceptions for valet parking at

the underground UPCI Facility garage or the UPMC Shadyside Garage, in that the parking plan, and specifically the valet aspect of it, would result in a better situation with respect to surrounding neighborhoods, citywide traffic circulation and urban design than would the construction of on-site parking spaces. Finally, it concluded that the Zoning Administrator did not err in relying upon the parking study submitted by Trans Associates to establish the availability of 100 parking spaces at the UPMC Shadyside Garage. The objectors appealed to the court of common pleas. The two appeals were consolidated, and on January 30, 2001, without receiving additional evidence, the court affirmed.[2]

## II

Appellants first assert that the Board erred by granting the proposed UPCI Facility an automatic 20 percent reduction for the parking requirement. They note that the Board determined that the proposed uses of the facility fell into three categories: institutional space, administrative offices and medical offices. They state that the Board relied upon the report submitted by UPMC Shadyside's traffic consultant to arrive at the number of spaces, but the consultant's report states in a footnote that the floor area was assumed to equal 80 percent of the gross square footage. Section 989.01 of the 1958 Code provided in part that floor area in the case of offices, merchandising or service types of uses means the gross floor area intended to be used for service to customers, clients etc., but it shall not mean

floors or parts of floors used principally for nonpublic purposes, as the storage

... of merchandise.... Floors or parts of floors used principally for toilet or rest rooms or for utilities or for fitting rooms ... shall also be excluded.... However, the definition of **FLOOR AREA** for the purpose of this Zoning Ordinance shall not be less than 70% of the total floor area for retail stores ... and not less than 80% of the total floor area for any other use.

The burden of proof in regard to establishing the reduction in floor area rests with the applicant and requires presentation of floor plans. The Board abuses its discretion when it makes findings not supported by substantial evidence, which is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). Appellants assert that proper proof was not offered.

Intervenor UPMC Shadyside responds that the Board was not asked to calculate the floor area of the UPCI Facility; that is the responsibility of the Zoning Administrator. It quotes from Section 914.03.C of the 1999 Code, which contains provisions similar to those quoted above, including a blanket prohibition of calculation of floor area under 80 percent of gross floor area. UPMC Shadyside states that floor plans were not available at the time of the Board's hearings, but plans were submitted to the Zoning Administrator, who performed a calculation after the hearings but before issuance of a building permit that confirmed the 80 percent figure. The Board did not err because it did not make any grant of reduction. In their reply brief Appellants contend that the assertion that the Zoning Administrator calculated

2. The Court's review when the court of common pleas took no additional evidence is limited to determining whether the Board committed an error of law or an abuse of

discretion. *Hill District Project Area Committee, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 162 Pa.Cmwlth. 323, 638 A.2d 278 (1994).

floor area after the Board hearings but before issuance of the building permit is not of record and should not be considered.

The Court notes that the Board's October 1, 1999 decision expressly based its calculation of the minimum number of spaces required on the traffic consultant's report and on UPMC Shadyside's characterization of the several uses to which the facility will be put, noting that fewer might have been required if the entire facility had been characterized as "institutional." Appellants do not support their contention that the net floor area determination may be based only upon floor plans. The Board did not assume 20 percent of the floor area for restrooms; utilities also are excluded, and they necessarily are sizable in a facility such as this. The Board did not abuse its discretion, and its decision was adequately supported.

### III

▮ Next Appellants contend that the Zoning Administrator exceeded his authority by approving the off-street parking proposal because the review and approval procedure for large facilities with ten or more spaces is delegated to the Board. Section 914.07.D.1 of the 1999 Code relating to "Small Facilities" provides: "If ten or fewer off-street parking spaces are required pursuant to Parking Schedule A (Sec.914.02.A), the Zoning Administrator shall be authorized to approve, approve with conditions, approve in part, deny or deny in part the Alternative Access and Parking Plan for that use." Notice through posting is required but not a hear-

ing. Section 914.07.D.2, "Large Facilities," provides:

The Zoning Board of Adjustment shall be authorized, in accordance with the Special Exception provisions of Sec. 922.07, to approve, approve with conditions, approve in part, deny or deny in part Alternative Access and Parking Plans for uses that require more than ten off-street parking spaces.... A public hearing shall be required.

Appellants cite *East Allegheny Community Council v. Oncology–Hematology Associates*, 783 A.2d 375 (Pa.Cmwlth.2001), where the Court held that the Board did not err when it interpreted Section 914.07.-D.1 as not conferring jurisdiction on the Zoning Administrator to approve a parking plan that proposed to combine six spaces from one lot with fifteen spaces from an adjacent lot to permit shared use of twenty-one spaces because of the ten-space limitation. Here 394 spaces are involved as established by the Board's October 1, 1999 decision.

UPMC Shadyside asserts that Appellants in their protest appeal from the Zoning Administrator's approval of the UPMC Shadyside parking plan on October 1, 1999 did not include any claim that the Zoning Administrator exceeded his authority. It notes that matters not raised below may not be considered on appeal. *Moses v. Zoning Hearing Board of Borough of Dormont*, 87 Pa.Cmwlth. 443, 487 A.2d 481 (1985).[3] It notes that in *East Allegheny Community Council* the appellants raised the issue of the limits of the Zoning Administrator's authority before the Board. In a reply brief Appellants argue that they raised the issue of the limits of the Zoning

**3.** As UPMC Shadyside stresses, the trial court issued an order on April 14, 2000 stating: "Any issue not briefed shall be deemed waived." Courts have frequently held that issues not raised in the trial court in zoning appeals are waived and may not be raised later. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998).

Administrator's authority in a letter to the Zoning Administrator dated October 3, 1999, copied to Board members, and that this letter was offered into evidence as Exhibit B at the November 18, 1999 hearing. The letter from Zins to Zoning Administrator Brown states in reference to the Board's October 1, 1999 decision: "While I generally disagree with the Board's analysis and decision to burden you with resolution of the following issues, there is no doubt that it is now your responsibility to act accordingly."

Appellants advanced no general challenge to the Zoning Administrator's authority to the Board at the hearing or in its brief to the trial court, and the Court concludes that the issue was in fact waived. In any event, the Court does not perceive a violation of the ordinance provisions. When UPMC Shadyside presented the Zoning Administrator with a proposal to alter the parking arrangements for the UPCI Facility substantially, he did not proceed to rule upon the proposal on the basis of his own authority, without a hearing, under Section 914.07.D.1. Rather, he referred the matter to the Board, and a public hearing was conducted. Once the Board determined the number of spaces required, it permitted submission to the Zoning Administrator of evidence to establish availability, and his action based upon that evidence could be and was appealed to the Board.

IV

■ Next Appellants contend that the Board could not approve the use of the UPMC Shadyside Garage for parking for the proposed UPCI Facility. They note that UPMC Shadyside was the subject of an institutional development plan approved by the Planning Commission and a subsequent conditional use application approved by the City Council of the City of Pittsburgh in 1988. Pursuant to Section 922.12.G of the 1999 Code, an amendment to an approved institutional master plan must be approved through the same procedure as a new plan; minor revisions may be approved as an Administrator Exception, but revisions that shall not be considered minor include those that will result in the creation of or the need for additional parking. Even if the Board had jurisdiction, Appellants contend that UPMC Shadyside is a nonconforming acute-care hospital located in an RM–4 residential district. The 1999 Code defines "enlargement" as an increase in the size, height, gross floor area or capacity of an existing structure, Section 926.74, and it provides in Section 921.02.A.1(b) that the enlargement of a nonconforming use that has the effect of making a structure non-complying in any other respect shall not be permitted as a special exception but rather shall be construed as a request for a variance, subject to the procedures of Section 922.09. Appellants maintain that UPMC Shadyside does not meet the conditions for a variance, and also they note that one standard for administrator exceptions for shared parking, mirroring special exception standards, is set forth in Section 914.07.G.1(a)(4) and states that the Board shall request a Planning Director report and recommendation on the planning aspects of the proposed shared parking use.

UPMC Shadyside notes that the Zoning Administrator makes determinations regarding the application of the zoning code to all properties located in the City of Pittsburgh. Pursuant to Section 923.02.-B.1 of the 1999 Code the Board has the power "[t]o hear and decide appeals where it is alleged that there is error in any order, requirement, decision or determination made by the Zoning Administrator . . . in the administration of this Code, and, upon appeal, to interpret any provision of

this Code where its meaning or application is in question." It stresses that Appellants chose the forum for their appeal, and they cannot now challenge its jurisdiction. Further, the existing garage is located in an RM–4 Residential Multi–Unit High Density District, as rezoned in 1999, and institutional master plans are not required for development of land in such a district, in contrast with the requirement for development of land in an EMI Educational/Medical Institution District, created by Section 905.03.C of the 1999 Code.

As for the claim of a need for a variance for enlargement of a nonconforming use, UPMC Shadyside argues that this issue also was not presented to the Board and is raised here for the first time and should not be considered. *Moses.* In any event, it cites Section 921.02.A.1 of the 1999 Code for the provision that "[a] nonconforming use may not be enlarged, expanded or extended to occupy parts of another structure or portions of a site that it did not occupy on the date that it became nonconforming" unless approved by the Board as a special exception. Because there is no expansion or physical change to the structure to accommodate the off-site parking of the UPCI Facility, there was no enlargement. As for the need for a report from the Planning Commission under the administrator exception procedure, UPMC notes that Appellants never asked any questions on this matter at the November 18, 1999 hearing. In their reply brief Appellants point again to the October 3, 1999 letter, and they refer to mention of Section 914.07.G.1 in discussing the Zoning Administrator's authority to approve valet parking.

The Court observes that the October 3, 1999 letter refers to a requirement of a report by the Planning Director only in regard to the Nichols Lots. The discussion at the hearing did not mention this point at all. Also, a review of Appellants' brief to the trial court shows no reference to this contention. Therefore, this issue has been waived and it may not be raised at this time. Further, the Court agrees that requirements applicable to institutional master plans apply to facilities in the EMI District under Section 905.03 of the 1999 Code, and the requirement of amendment through the procedures set forth in Section 922.12.G does not apply. The Board acted within its jurisdiction in considering this matter.

V

■ Next Appellants argue that the Board may not approve use of the so-called Nichols Lots for the UPCI Facility. They assert that the two Nichols Lots are not to be used for "shared" parking under the 1999 Code. They note that the two lots, side-by-side, are treated separately because they are located in an LNC, Local Neighborhood Commercial District, in which commercial parking lots are limited to twenty-four spaces by Section 911.02. The Zoning Administrator stated that the use of the lots was classified Parking, Commercial (Limited), and so they could be approved as shared parking as an Administrator Exception. Section 914.07.-G.1(a)(2), relating to zoning classification of shared parking provides: "Shared parking areas shall be considered accessory uses of primary uses that the parking spaces are intended to serve. Shared parking areas shall require the same or a more intensive zoning classification than that required for the most intensive of the uses served by the shared parking lot." Appellants contend that the Board erred when it found in the February 2000 decision that the zoning classification of the Nichols Lots is the same as that for any of the uses proposed for the UPCI Facility.

They assert that a Planning Commission report was required for this also.

UPMC Shadyside contends that the stated purpose of Section 914.07.G.1(a) is "to encourage efficient use of land and resources by allowing users to share off-street parking facilities for multiple use developments" and that the UPCI Facility is such a multiple use development. Further, it argues that the Nichols Lots are in an LNC District, in which all of the uses for the UPCI Facility are permitted uses under the Use Table of Section 911.02 of the 1999 Code. In a reply brief UPMC Shadyside points out that laboratory/research facilities with a gross floor area less than 10,000 square feet are a permitted use in the LNC District, but the UPCI Facility will have over 150,000 square feet of such use.

The Court observes that the term "Laboratory/ Research Services" in the Section 911.02 Use Table, upon which Appellants rely, means "an establishment engaged in conducting basic, applied industrial or scientific research, *other than medical testing* . . . ." (Emphasis added.) Thus this provision does not appear to apply, although the Zoning Administrator is authorized to determine the classification of a new or unlisted use type under Section 911.03 of the 1999 Code. Regarding Planning Commission involvement, Appellants correctly note that Zins' October 3, 1999 letter asserted that the procedures under Section 914.07.-G.1 should be followed, including a requirement of a report by the planning director. However, this argument also was not raised before the trial court, and it is waived.

## VI

■ Appellants contend that the Board erred in approving a reduction of the on-site parking garage from 500 stalls to 149 stalls because the proposal modified the issues presented at the original hearing. They quote Robert S. Ryan, Pennsylvania Zoning Law and Practice § 9.4.11 (1992), for the proposition that generally amendments that do not change the issues should be permitted, but a modification in the applicant's drawings or plans that is significant in terms of the issues involved probably requires remand to the zoning officer in cases that arise by appeal to afford the opposition time to prepare its defense. An obvious exception is the amendment designed to conform the application to the requirements of the ordinance. In *Lower Southampton Township v. B.P. Oil Corp.*, 16 Pa.Cmwlth. 108, 329 A.2d 535 (1974), for example, the applicant sought to amend its application to eliminate a variance request, and the Court held that the amendment should not have been considered as a new application. This case, however, does not involve an amendment to increase underground parking.

Appellants note that in *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998), the Supreme Court announced a relaxed standard for consideration of dimensional variances. Subsequent cases, including *Cardamone v. Whitpain Township Zoning Hearing Board*, 771 A.2d 103 (Pa.Cmwlth.2001), have indicated that the relaxed standard applies only to the consideration of whether unnecessary hardship results from unique physical characteristics or conditions of the land. They argue that in this case the reduction of the on-site parking goes directly to the issues involved in the original height variance applications, in particular the requirement under Section 909.05(a)(3)(C) of the 1958 Code of showing that the grant of a variance will not be injurious to neighborhoods or otherwise detrimental to the people at large. Here the added height for which the variances were sought equates to add-

ed floor space, which means increased parking demand. There was no opposition in the original proceeding because the proposal appeared to provide adequate on-site parking.

UPMC Shadyside responds that the height of the structure is unrelated to the size of the parking garage. In *Lower Southampton Township* the Court referred to the principle stated by Ryan that modifications that are significant in terms of the issues involved require a remand. Here the size of the buildings are unaffected by the reduction to the size of the underground parking facility. The Court agrees that the issue of adequate parking is sufficiently unrelated to the height variance issue so that the Board did not err by deciding not to re-open the question of height variances. Although height of a structure relates to its capacity, the issue of whether adequate parking has been provided is analytically distinct. The Board was capable of considering and resolving that separate question without reference to the height variances.

## VII

■ Finally, Appellants contend that the Board erred in approving the second application because it did not follow its own rules of procedure. They quote Rule 413 of the Board's Rules of Procedure, which provides in part:

> Any request for a re-hearing of an Appeal or Application upon which a decision has been rendered or upon which a decision is pending by the Board, shall be presented in writing by the appellant or by counsel for the appellant and such writing shall state specifically and clearly the alleged new evidence or other basis upon which the request for a re-hearing is based and shall be accompanied by a sworn averment that such evidence was not reasonably available to the appellant at the time of the original hearing. The Board will thereafter study and consider the aforesaid request and will determine whether or not a re-hearing shall be granted and whether or not the appellant shall be heard at the original zone case number or shall be required to file a new appeal at a new zone case number.

Appellants assert that UPMC Shadyside did not file the required sworn averment as to prior unavailability of evidence and that without it the Board should have required UPMC Shadyside to start over with another hearing with the reduced on-site garage, alternatives to on-site parking and a new request for a height variance. Also the Board granted a protective order as to Appellants' subpoena of related documents, which they assert violated Rule 411, requiring the Board to establish procedures consistent with due process of law. UPMC Shadyside states that Appellants failed to raise this issue before the Board. The Court agrees that Appellants did not state issues of violation of Rules 413 and 411 before the Board, and they therefore waived those contentions. On the whole, the Court concludes that the Board did not abuse its discretion nor commit an error of law. *Valley View Civic Ass'n.* It therefore affirms the trial court's order.

## ***ORDER***

AND NOW, this 7th day of October, 2002, the order of the Court of Common Pleas of Allegheny County affirming orders of the Zoning Board of Adjustment of the City of Pittsburgh is affirmed.